STATE OF NORTH CAROLINA v. STEVIE LOCKLEAR

No. 19A92

(Filed 25 June 1992)

**Criminal Law § 693 (NCI4th) — jury's request for instructions — written form of oral instructions — handwritten strike-outs and additions — no plain error**

    The trial court did not commit plain error when, in response to a jury request for a written list of the criteria for first degree murder, second degree murder and voluntary manslaughter, and without objection from defendant, the court submitted the typewritten form of its earlier oral charge, with certain paragraphs, sentences and phrases marked through with ink, and with several handwritten additions in the margins, where the court attempted to prevent the possibility of confusion from the strike-outs and handwritten additions by orally instructing the jury regarding use of the instructions and encouraging the jury to make the court aware if it had any

difficulty understanding the modified instructions; the court offered to bring the jury back into the courtroom and repeat the oral instructions; and defendant failed to show that the jury actually was confused by the written instructions or that it gave undue emphasis to matters prejudicial to him.

**Am Jur 2d, Appeal and Error § 813; Trial §§ 1154, 1155.**

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Ellis, J.*, at the 10 September 1991 Criminal Session of Superior Court, ROBESON County, upon a jury verdict finding defendant guilty of one count of first-degree murder. Heard in the Supreme Court 14 May 1992.

*Lacy H. Thornburg, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*John Wishart Campbell for defendant appellant.*

WHICHARD, Justice.

This case presents the question of whether the trial court committed reversible error in delivering to the jury in writing during its deliberations certain portions of the court's instructions. We conclude that it did not and that defendant received a fair trial, free from prejudicial error.

A detailed presentation of the facts is unnecessary to an understanding of the legal issue involved. In summary, the State presented evidence tending to prove the following: At about nine p.m. on 12 March 1991, the victim, Jadell Locklear, drove with Johnny Troublefield and Curtis Locklear to defendant's residence. Defendant's girlfriend, Karen Williams, came out onto the trailer porch and saw Jadell Locklear back the car out of the yard, pull it onto the road, and sit in the car with the engine running. Williams yelled at him to drive back into the yard, but Jadell Locklear responded by saying that if defendant were a man, he would come out into the yard. Defendant then came out of the front door of the trailer, yelled something, and shot his .38 caliber pistol into the car, killing Jadell Locklear with a single bullet through the neck.

Defendant presented evidence tending to show that Jadell Locklear had had previous violent altercations with defendant's sister, who was the mother of Jadell's daughter. Wilbert Locklear

testified that he was visiting defendant on the night of the killing and he heard Jadell tell defendant that he should "come out and talk to him like a man before he cut loose." Defendant testified that he had previously told Jadell to stay away from his house. When defendant heard Jadell say that he should come outside like a man, defendant went to the bedroom and got his pistol. Defendant shot towards the road, hoping to scare Jadell away. Defendant testified that he had known Jadell to shoot several people and he was afraid Jadell and his friends were going to shoot him.

Defendant was indicted on one count of first-degree murder. In a noncapital trial, the State proceeded solely on the basis of the felony murder rule, with the underlying felony being shooting into an occupied vehicle. The jury returned a guilty verdict, and the trial court sentenced defendant to life imprisonment.

Defendant brings forward one assignment of error. He contends that the trial court erred when, in response to a jury request for a written list of the criteria for first- and second-degree murder and voluntary manslaughter, the court submitted the written form of its earlier oral charge. Defendant acknowledges that he made no objection to the written instructions, and he does not contest their accuracy. He argues, instead, that the trial court erred because the instructions were illegible, unintelligible, and confusing. The instructions were typewritten, with certain paragraphs, sentences, or phrases marked through with ink, and with several handwritten additions in the margins. Defendant further contends that because the written instructions dealt with only a part of the entire oral instruction, they had the potential to emphasize elements unduly prejudicial to defendant.

The trial court's decision to submit the written instructions to the jury occurred in the following context:

THE COURT: Gentlemen, the jury has passed out a note which reads, "We would like to know if it is possible for us to have a written list of the criteria for first, second and voluntary manslaughter. We have questions on the differences between the various charges. . . ."

. . . .

I have my charge here that I put together. Does anyone have any objection to sending it in?

[THE STATE]: State doesn't have any objections.

[DEFENSE COUNSEL]: I don't have any objection to either part of it.

THE COURT: Let me have a black magic marker so I can— some of this is surplusage . . . .

. . . .

[DEFENSE COUNSEL]: Might just be more prudent to call them in here and give it to them again.

THE COURT: I can read it or—they've asked for the—to have it in there. It's my understanding there wasn't any objection to passing it to them.

[DEFENSE COUNSEL]: I've got some concern, though, about—well, let's look at it when you get done.

THE COURT: One of the last times I gave it to the jury, they still wanted to see it because they had difficulties comprehending it so I—I did scratch out the parts that were objected to that were not—that were surplusages. If you have objection to it, though, I will bring them back and just read it to them again.

[DEFENSE COUNSEL]: I don't have any inherent—I want to see it, see what it's going to look like.

THE COURT: Yes. Okay. Y'all step up here and take a— just take a look.

(Counsel approached the bench and viewed the charge.)

[DEFENSE COUNSEL]: John and I can make it all out as you have fixed it up for them. If I—if I didn't know what you were saying, I would have trouble making out some of those inserted portions.

[THE STATE]: Could you maybe write that in again with your ink pen, Judge, so it will be more legible.

THE COURT: I'm not sure writing it in will make it more legible with my handwriting, but I'll go over it again.

The court retraced the handwritten portions of the instructions and had the jury return to the courtroom. The court then addressed the jury as follows:

Ya'll have first requested that—to have the instructions that I read to you. I have prepared those. Let me explain to you what—how to use them. There's certain portions of the pages that have been drawn through with a magic marker. They have nothing to do with the case and that part you should disregard. The part that you have requested is typed out and there are certain portions that are in my handwriting. You may have difficulty reading my handwriting. If you have any questions, cannot decipher what I say, if you'll come back in with another question, I will try to decipher what I have written in; but I think that it will be explanatory to you when you look at it. But if you do have difficulties reading my writing, let me know.

The trial court gave the jury the written instructions and sent the jury to resume deliberations. The court then asked counsel for the State and for defendant if there were any objections "to the instructions I just gave the jury." Both counsel expressly stated that they had no objections. The written instructions which the jury requested regarding the charged offenses were identical to the oral instructions previously given to the jury.

Having failed to object to the submission of the written instructions to the jury, defendant may not assign such instructions as error. N.C. R. App. P. 10(b)(2). Upon such failure to object to jury instructions, defendant's contention is subject to review only under the plain error standard. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). Plain error is

"*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*Id.* (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) ) (alteration in original).

STATE v. LOCKLEAR

[331 N.C. 720 (1992)]

We conclude that there was no plain error. The trial court acted with great caution in responding to the jury's request. It discussed at length with counsel its proposal to submit the written instructions from which it had earlier instructed orally. The substance of the submitted instructions included the elements of each of the charged offenses and defendant's theory of defense. The court's instructions did not include matters upon which it had instructed earlier, but which were not responsive to the jury's query. There was little danger that, as a result of the form of the written instructions, the jury would place undue emphasis on any particular aspect of the submitted instructions.

The court recognized the possibility of confusion arising from numerous strike-outs and handwritten additions, but again took pains to prevent such confusion. The court offered to bring the jury back into the courtroom and repeat the oral instructions. The court also, in advance of actually giving the jury the written instructions, orally instructed it regarding use of the instructions and encouraged it to make the court aware if it had any difficulty understanding the modified instructions. Defendant has failed to show that the jury actually was confused by the written instructions or that it gave undue emphasis to matters prejudicial to him.

We are confident that the court's efforts to minimize the risk of confusion and misinterpretation were successful. The written instructions served fairly and adequately to answer the jury's inquiry. We cannot conclude that the form in which they were submitted had a probable impact on the jury's finding that defendant was guilty. *Id.* Defendant's assignment of error is thus without merit.

No error.