STATE OF NORTH CAROLINA v. JASON CHRISTOPHER WALKER & EMIL E.
BROWNING, JR. & JAVIER A. HERNANDEZ, JR.

No. COA03-1426

(Filed 7 December 2004)

### 1. Robbery— armed—failure to instruct on lesser-included offense of common law robbery—invited error

The trial court did not commit plain error by failing to instruct the jury on the charge of common law robbery as a lesser-included offense of armed robbery, because: (1) a defendant may not decline an opportunity for instructions on a lesser-included offense and then claim on appeal that failure to instruct on the lesser-included offense was error; and (2) in the instant case two of the defendants foreclosed appeal of this issue when neither of their attorneys objected to the trial court's instructions nor requested additional instructions even after the trial court specifically stated it would not instruct on any lesser-included offense for robbery with a dangerous weapon, and a third defendant waived his right to appeal this issue since he did not object during the jury charge conference and did not cite error or plain error as to this issue.

### 2. Constitutional Law— effective assistance of counsel—failure to request instruction

Defendants were not denied effective assistance of counsel based on their attorneys' failure to ask the trial court to submit the lesser-included offense of common law robbery to the jury in regard to the robbery with a dangerous weapon charge, because: (1) defense counsel's decision was not an unreasonable trial strategy since it was used in an effort to save their clients' military careers, and the fact that the trial strategy failed does not mean that defendants were deprived of effective assistance of counsel; and (2) defendants failed to show their counsels' actions fell below an objective standard of reasonableness.

### 3. Evidence— cross-examination—letters from defendant to district attorney—plea discussions

The trial court erred in a robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by allowing the State to cross-examine defendant Walker with letters he wrote to the district attorney in which he offered to plead guilty, and defendant is entitled to a new trial, because the letters

constituted a plea discussion within the meaning of N.C.G.S. § 15A-1025 and N.C.G.S. § 8C-1, Rule 410 when: (1) the letters stated defendant was willing to confess and help in any way in order to get probation, which articulated the plea arrangement defendant sought; (2) even though the prosecutor did not initially respond to defendant's letters, the letters ultimately led to the prosecutor entering into plea discussions with defendant that resulted in defendant entering a guilty plea which was subsequently withdrawn; and (3) the admission of evidence that defendant was considering pleading guilty to the charges against him were highly prejudicial to his case and potentially influenced the jury's decision.

4. **Confessions and Incriminating Statements— custody— Miranda warnings—statement to a superior officer in the armed forces**

The trial court did not err in a robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by admitting evidence of defendant Walker's statement made to a superior officer in the armed forces without Miranda warnings, because: (1) the evidence does not indicate that defendant was in custody at the time he was discussing the incidents of 7 April 2004 with his superior; (2) there was no testimony that defendant felt he could not leave or that he had to answer his superior's questions; (3) the superior was simply inquiring into why defendant was being questioned; and (4) even assuming arguendo that defendant's statements to his superior were made during a custodial investigation, the admission of defendant's statements were harmless beyond a reasonable doubt when the statement was substantially identical to defendant's own testimony at trial.

5. **Robbery— armed—instruction—failure to specify type of weapon—plain error review**

The trial court did not commit plain error by its instruction to the jury on the charge of armed robbery even though defendant Browning contends the trial court failed to specify the type of weapon used, because: (1) considering the warrant, indictment, evidence, and jury charge given, it appears that the jury found defendant guilty of the charge based on the use of a bat as the dangerous weapon; (2) nowhere in the trial court's instructions is there a mention of a gun; (3) the evidence presented at trial showed that the victim was beaten with a bat; and (4) there was

nothing in the record to suggest that the jury was misled as to what instrument constituted the dangerous weapon.

**6. Sentencing— mitigating factor—good character**

The trial court did not err in a robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by failing to find the mitigating factor of good character for defendant Browning, because: (1) character evidence may still fail to establish by a preponderance of the evidence any given factor in aggravation or mitigation even if it is uncontradicted, quantitatively substantial, and credible; (2) the statements in the letters from various persons stating that defendant had displayed a high level of respect and honesty toward his family, friends, and community, that he was a caring young man who was generous and thoughtful, and that he was a dependable individual with a superior work ethic, were general statements as to defendant's character rather than specific; (3) the trial court did not have an opportunity to examine the individuals writing the letters to determine the extent of their relationship with defendant, assess their credibility, or determine what they knew about defendant's activities; (4) one letter did not describe recent knowledge of defendant's character and in fact inferred bad character; and (5) defendant's character evidence, although not contradicted, was not the type of evidence which demonstrated defendant's good character by a preponderance of the evidence.

**7. Appeal and Error— motion for appropriate relief—aggravated sentences**

The Court of Appeals deferred ruling on defendant Browning's motion for appropriate relief based on *Blakely v. Washington*, 159 L. Ed. 2d 403 (2004), pending guidance of this issue from our Supreme Court, who on 29 September 2004 stayed the Court of Appeals decision in *State v. Allen*, 166 N.C. App. 139 (2004), which addressed the applicability of *Blakely* to the imposition of aggravated sentences.

**8. Constitutional Law— right to remain silent—mention of post-arrest silence—plain error analysis**

The trial court did not commit plain error in a robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by admitting an investigator's testimony concerning defendant Hernandez's exercise of his right to remain silent and to have counsel present, because: (1) the investi-

STATE v. WALKER

[167 N.C. App. 110 (2004)]

gator was attempting to describe the circumstances under which he questioned defendant and defendant revealed that he accepted $600 from a codefendant to remain silent about the robbery; (2) the testimony was offered to show the chronology of the interview and for the purpose of showing that defendant's admission came after he received his Miranda warnings, but before he invoked his right to have counsel present; (3) the brief testimony appeared to be the only place in the record referencing defendant's silence; (4) the prosecutor did not attempt to emphasize defendant's silence or his request for counsel as indicators of defendant's guilt; and (5) the evidence against defendant was substantial.

### 9. Constitutional Law— right to remain silence—privilege against self-incrimination

The trial court did not abuse its discretion by denying defendant Hernandez's motion for a mistrial based on the prosecutor's comments made after he finished his cross-examination of codefendant Walker that he reserved the right to recall Walker after the testimony of the other defendants, because: (1) the trial court removed the jurors from the courtroom after the prosecutor made the comment, the trial court gave a curative instruction immediately following the jurors' return to the courtroom, and it is presumed that jurors will comply with the trial court's instructions; and (2) defendant failed to show the trial court's instruction was insufficient to cure any potential prejudice resulting from the comment.

### 10. Robbery— dangerous weapon—motion to dismiss—sufficiency of evidence—aiding and abetting

The trial court did not err by denying defendant Hernandez's motion to dismiss the charge of robbery with a dangerous weapon under the theory of aiding and abetting, because the evidence demonstrated that: (1) defendant intended to assist a codefendant in robbing the bar; (2) defendant in fact assisted his codefendants; and (3) two codefendants knew of and relied on defendant's support and aid.

### 11. Appeal and Error— appealability—joinder—plain error analysis inapplicable

Although defendant contends the trial court committed plain error by granting the State's motion to join the three codefendants' cases for trial, this assignment of error is overruled

because our Supreme Court has declined to extend plain error analysis beyond issues concerning jury instructions and evidentiary rulings.

**12. Appeal and Error— appealability—use of uncertified interpreter—plain error analysis inapplicable**

Although defendant contends the trial court committed plain error by permitting an uncertified Spanish interpreter to interpret the testimony of three witnesses during the State's case-in-chief, this assignment of error is overruled because the Court of Appeals has already specifically declined to extend the application of the plain error doctrine to this very issue.

Appeal by defendants from judgments entered 15 November 2002 by Judge Thomas D. Haigwood in Beaufort County Superior Court. Heard in the Court of Appeals 9 June 2004.

*Roy Cooper, Attorney General, by Philip A. Lehman, Assistant Attorney General, for the State. (Jason Christopher Walker)*

*Roy Cooper, Attorney General, by Kristine L. Lanning, Assistant Attorney General, for the State. (Emil E. Browning, Jr.)*

*Roy Cooper, Attorney General, by Barbara A. Shaw, Assistant Attorney General, for the State. (Javier A. Hernandez, Jr.)*

*Staples Hughes, Appellate ·Defender, by Kelly D. Miller, Assistant Appellate Defender, for defendant-appellant Walker.*

*Brian Michael Aus for defendant-appellant Browning.*

*Geoffrey W. Hosford for defendant-appellant Hernandez.*

STEELMAN, Judge.

Each of the defendants were indicted on charges of robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. The cases were joined for trial pursuant to N.C. Gen. Stat. § 15A-926.

The evidence at trial tended to show that in the early morning hours of 7 April 2002, defendants Walker, Browning, and Hernandez, together with Justo Aguillon, robbed a bar and nightclub in Beaufort County known as "Desperado's." Both Browning and Aguillon had previously worked as bouncers at the bar before being fired. At the

time of the robbery, Hernandez worked at Desperado's part-time as a bouncer. Walker had no prior connection to the bar. All four of the men were on active duty with the United States Marine Corps, stationed at Camp Lejeune.

The bar closed around two in the morning, with five bouncers remaining to help clean up, including Hernandez. At approximately 3 a.m., three men arrived at Desperado's with their faces covered, wearing dark clothing, and carrying weapons. Aguillon carried a small baseball bat, Walker carried a gun and a pool stick, and Browning also carried a gun. The bouncers were outside when the robbers arrived. Two of the bouncers ran away when they saw the men were carrying weapons, and the third bouncer ran away after being assaulted. A fourth bouncer, Hector Ramos, testified that two of the robbers pointed guns at him and forced him to stay against the wall outside of the bar. Defendants questioned Ramos about how many bouncers were inside, the location of the owner, whether the owner's boyfriend was inside, and whether the main entrance to the club was locked. When defendant Hernandez, the fifth bouncer working that night, walked by, one of the other defendants told him to sit down with Ramos against the wall. Defendants asked Hernandez the same questions about the security of the club. While Walker remained outside to guard the bouncers, Browning and Aguillon went inside. Only the owner of the bar, Cynthia Lee Perez (Perez) and her boyfriend, Omar Marque (Marque), were inside the bar. Perez was standing behind the bar and Marque was in front of the bar. Once inside, Browning put one of the guns to Marque's head and pushed him to the floor. Aguillon assaulted Perez with the bat, striking her several times in the head and back, until the bat broke. Perez then pretended to fall to the floor dead. Aguillon grabbed the money from behind the bar, and he and Browning ran outside where defendants got into Walker's car and fled. Defendants' drove to a rest stop where they had parked a second car, belonging to Aguillon. They then proceeded to Walker's home and divided the money. Walker and Browning each received between $1,400.00 and $1,500.00 each, Hernandez received $600.00 for "keeping quiet," and Aguillon kept the remainder of the money.

Even though Ramos could not see the defendants' faces since they were wearing masks, he recognized Aguillon's voice. Perez was unable to visually identify any of the robbers, but recognized the voice of one of the robbers as belonging to one of her former bouncers. Perez suffered serious injuries and required thirty-three

stitches to close the wounds to her head. Perez testified that the robbers stole between $8,000.00 and $10,000.00.

Before the trial of his co-defendants, Aguillon pled guilty pursuant to a plea agreement to robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury. As part of his plea agreement, Aguillon agreed to testify against the other defendants and in exchange the charges against him would be consolidated and he would receive a sentence in the presumptive range. Aguillon knew both Browning and Hernandez from the Marine Corps, although he did not meet Walker until the night of 6 April 2002. Aguillon testified that about a week and a half before the robbery Browning approached him with a plan to rob Desperado's and asked if he was interested in participating. Aguillon agreed to help Browning rob the bar. Aguillon visited Hernandez on two occasions because he knew Hernandez worked at Desperado's and would have knowledge about security at the bar and where the owner kept the money. Hernandez answered all of Aguillon's questions. On the second visit, Browning accompanied Aguillon and informed Hernandez of his plan to rob the bar.

On the night of 6 April 2002, Aguillon testified he picked Browning up and they drove to Walker's home, where they hungout until around 1:00 a.m. on the morning of 7 April 2002. Aguillon stated that they discussed their plan with Walker and got their gear together. He also stated that while they were at Walker's home Browning painted pellet guns so they would look like real guns. Defendants waited to leave so that they would arrive at the bar around closing time.

Investigator Wayne Melton of the Beaufort County Sheriff's Office investigated the robbery, assisted by two agents from the U.S. Department of Defense. When Detective Melton interviewed Perez, she stated she believed Browning and Aguillon were involved in the robbery. As a result of Perez's statements, Detective Melton interviewed each of the defendants and Aguillon. Walker, Browning, and Aguillon each provided a signed written statement to Detective Melton. In Walker's written statement, he claimed he only went to Desperado's to provide back-up for two of the men who wanted to settle scores with some of the bar's employees, and he knew nothing about a planned robbery. At trial, Walker testified that Browning told him he had a problem with someone named "Pablo," who was Perez's boyfriend, and wanted to go to Desperado's to confront "Pablo."

Walker agreed to go with him to provide back-up. Walker denied dividing the money, stating that Aguillon just left some of it at his house to keep him quiet. In rebuttal of Walker's testimony, Michael Paschall (Paschall) testified for the State. Paschall shared a cell with Walker while Walker awaited his trial. Paschall testified that while they were in jail, Walker discussed the robbery with him and Walker admitted he "knew what they were going there for . . . ."

The jury found Walker and Browning guilty of robbery with a dangerous weapon and assault inflicting serious injury. The jury found Hernandez guilty of robbery with a dangerous weapon, but he was acquitted on the assault charge. The trial court sentenced Walker to an active sentence from the presumptive range of 70 to 93 months; sentenced Browning to an active sentence from the aggravated range of 80 to 105 months; and sentenced Hernandez to an active sentence from the presumptive range of 51 to 71 months. Defendants appeal.

There are three defendants with three separate appeals. We first address common assignments of error and then address their separate assignments of error.

## I. Common Assignments of Error—Walker and Browning

### A. Jury Instruction Regarding Common Law Robbery

[1] In their first assignment of error, defendants Walker and Browning contend the trial court committed plain error by failing to instruct the jury on the charge of common law robbery as a lesser included offense of armed robbery. We disagree.

Since defendants failed to raise this issue before the trial court our review is limited to plain error. *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983) (noting our Supreme Court has held plain error review to be appropriate regarding situations involving jury instructions). The plain error rule only applies in truly exceptional cases. *Id.* at 661, 300 S.E.2d at 379. To constitute plain error the appellate court must be convinced that absent the error, the jury probably would have reached a different verdict. *Id.*

Defendants must also overcome the bar of invited error. Under the doctrine of invited error, "a defendant is not prejudiced by . . . error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c) (2003). "[A] defendant may not decline an opportunity for instructions on a lesser included offense and then claim on appeal that failure to instruct on the lesser included offense was error." *State v. Gay,*

334 N.C. 467, 489, 434 S.E.2d 840, 852 (1993). In *Gay*, our Supreme Court refused to grant defendant a new trial where the trial court specifically asked defense counsel if there were any lesser included offenses he wanted the judge to instruct the jury on, to which defense counsel replied in the negative. *Id. See also State v. Williams*, 333 N.C. 719, 728, 430 S.E.2d 888, 893 (1993); *State v. Blue*, 115 N.C. App. 108, 112, 443 S.E.2d 748, 750 (1994) (holding a defendant cannot decline to object to an instruction at trial and then use this deliberate choice to claim error on appeal.)

In this case, during the charge conference, the trial judge initially proposed submission of separate verdict sheets for each defendant with the following possible verdicts: (1) guilty of robbery with a dangerous weapon or not guilty; and (2) guilty of assault with a deadly weapon inflicting serious injury or not guilty. Walker's attorney requested the jury also be instructed on the lesser included offense of assault inflicting serious injury. Neither Browning nor Hernandez wanted such an instruction. The trial judge then attempted to clarify defense counsel's position when he stated: "[Y]ou're saying that you agree that the verdict sheets should charge your client—*should be up or down as it relates to robbery with a dangerous weapon* and up or down as it relates to assault with a deadly weapon inflicting serious injury" (emphasis added). When asked this, both Browning's and Hernandez's attorneys agreed with the judge's statements that they wished to keep the charge to the jury just as the trial judge initially proposed and did not request any lesser included offenses be submitted to the jury. The trial judge ruled that the lesser included offense of assault inflicting serious injury would be submitted to the jury as to all three defendants. Following this discussion, the trial judge stated:

> Now with regard to the Court's charge to the jury, gentleman, I propose to charge in accordance with North Carolina pattern instructions . . . assault with a deadly weapon inflicting serious injury; 208.60, assault inflicting serious injury; 217.30, robbery with a dangerous weapon other than with a firearm *but not including any lesser offenses* and incorporating within each of those charges 202.10, acting in concert . . .

(emphasis added). None of the defendant's counsel objected to these instructions or requested additional instructions, even after the trial court specifically stated it would not instruct on any lesser included offenses for robbery with a dangerous weapon. Therefore, Walker and Browning "foreclosed any inclination of the trial court

to instruct on the lesser-included offense of [common-law robbery]" and are not entitled to any relief on appeal. *Williams*, 333 N.C. at 728, 430 S.E.2d at 893.

Defendant Hernandez did not object during the jury charge conference and does not now cite error or plain error to this issue. Therefore, he has waived his right to appellate review under N.C. R. App. P. 10(b)(2) and 10(c)(4) (2004). During oral arguments before this Court, Hernandez's attorney requested we exercise our authority under Rule 2 of the Rules of Appellate Procedure and consider this issue as to Hernandez. We decline to do so.

## B. Ineffective Assistance of Counsel

**[2]** In defendants Walker and Browning's second assignment of error, they contend they were denied effective assistance of counsel and are therefore, entitled to a new trial on the robbery with a dangerous weapon charge. They assert that their respective attorneys failed to ask the trial court to submit the lesser included offense of common law robbery to the jury. We disagree.

In order for a defendant to demonstrate he was denied effective assistance of counsel he must satisfy a two-prong test: (1) his counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) his attorney's deficient performance prejudiced him. *State v. Fletcher*, 354 N.C. 455, 481, 555 S.E.2d 534, 550 (2001), *cert. denied*, 537 U.S. 846, 154 L. Ed. 2d 73 (2002) (applying the test set out in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984)). Counsel's errors must be considered " 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' " *Id.* (citations omitted).

"Counsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear." *Id.* at 482, 555 S.E.2d at 551. It is presumed that "trial counsel's representation is within the boundaries of acceptable professional conduct." *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004).

In analyzing the reasonableness of the attorney's actions under the first prong of the test, "the material inquiry is whether the actions were reasonable considering the totality of the circumstances at the time of performance." *State v. Gainey*, 355 N.C. 73, 112-13, 558 S.E.2d 463, 488, *cert. denied*, 537 U.S. 896, 154 L. Ed. 2d 165 (2002). In this case, defense counsel's decision not to request an instruction on

the lesser included offense of common law robbery was not an unreasonable trial strategy. The record indicates defendants' counsel were employing an "all or nothing" strategy, hoping the jury might find one element of the crime charged to be missing, that is, that the bat was not a dangerous weapon and thus, find their clients not guilty. It can reasonably be inferred from the record that defense counsel made a tactical decision in an attempt to save their clients' military careers. The strategy failed. The fact that it failed does not mean that defendants were deprived of effective assistance of counsel. Walker and Browning have not shown their counsel's actions fell below an objective standard of reasonableness. Defendants have failed to satisfy the first prong of the test demonstrating they were denied effective assistance of counsel. This assignment of error is without merit.

## II. Defendant Walker's Remaining Assignments of Error

[3] In Walker's third assignment of error, he contends he is entitled to a new trial as to both charges, because the trial court erred in allowing the State to cross-examine him with letters he wrote to the district attorney in which he offered to plead guilty. We agree.

Walker asserts that N.C. Gen. Stat. § 15A-1025 and Rule 410 of the Rules of Evidence expressly make plea discussions inadmissible. N.C. Gen. Stat. § 15A-1025 provides: "[t]he fact that the defendant or his counsel and the prosecutor engaged in plea discussions or made a plea arrangement may not be received in evidence against or in favor of the defendant in any criminal or civil action . . . ." N.C. Gen. Stat. § 15A-1025 (2003). Rule 410 provides that "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn" is inadmissible in any criminal proceeding. N.C. Gen. Stat. § 8C-1, Rule 410 (2003).

In deciding whether the trial court erred in allowing the State to cross-examine Walker as to these letters, we must apply a two-part test. First, we must determine whether the letters constituted a "plea discussion." *See State v. Flowers,* 347 N.C. 1, 25-26, 489 S.E.2d 391, 405 (1997). If we conclude the letters constituted a plea discussion, and were therefore inadmissible, we must then determine whether the State's cross-examination of Walker with the letters resulted in prejudice to Walker, entitling him to a new trial. *See State v. Wooten,* 86 N.C. App. 481, 482, 358 S.E.2d 78, 79 (1987) (noting the admission of inadmissible testimony alone does not automatically require a new trial).

We address the first prong of the test to determine whether Walker's letters to the prosecutor constituted a plea discussion. Walker wrote a total of seven letters to the prosecutor. However, none of those letters are included in the record. The only evidence we have of their content are the portions which the prosecutor read to Walker during cross-examination. Our analysis is thus limited to the testimony preserved in the record, which is as follows:

[Prosecutor, Mr. Schmidlin] Q: In the several letters that you wrote to the District Attorney's office, do you remember writing "I would like to plead guilty to these charges so I can get my case over with. This is my first offense ever, and I don't know where I stand with it. I just want to get everything over with."?

[Defense Counsel] Mr. Johnston: Objection.

. . . .

A: Yes, I wrote that letter. Yes, I wrote that letter, Mr. Schmidlin.

Q: Do you remember also in that letter writing, "I made a terrible mistake."?

A: Yes, sir, should have been at home.

Q: Do you remember writing another letter that said, "This case is about the Desperado's Nightclub robbery, I'm the one who was outside."?

A: Yes, sir.

Q: Do you remember writing in another letter, "I want to plead guilty.", and then later in that letter, "I told my lawyer that I wanted to plead guilty. I don't know what he's doing, but I want to plead guilty."?

A: Sir, I asked for lesser charges also and a 1096 plea agreement in those letters.

Q: Do you remember saying those words?

A: Yes, sir.

Q: Do you remember writing in another letter, "I am trying to plead guilty, and I would highly appreciate it if you would call me to superior court the week of June 10th, 2002 to plead guilty."?

A: Yes, sir to lesser charges.

Q: And later in that letter do you remember writing, "I've made a big mistake, and I've realized how much of an effect this has been on my family and my life and career."?

A: Yes, sir.

Q: Do you remember later in another letter writing, "I'm willing to confess what I've did and who planned the robbery and help you in any way to get probation, no matter how long or how much the restitution fee."?

. . . .

Q: Did you write that?

A: Yes, sir.

Defendant properly preserved this question for our review, by objecting at trial. *See* N.C. R. App. P. 10(a) (2003).

In *State v. Flowers*, our Supreme Court found that a defendant's letter to a prosecutor did not constitute a "plea discussion" within the meaning of N.C. Gen. Stat. § 15A-1025, but was rather an admission of guilt where: (1) the letter expressed the defendant's desire to dismiss his attorney and claimed his co-defendants were innocent; (2) the letter did not state the plea defendant had in mind or other specifics, but only mentioned the possibility of a plea bargain; (3) the prosecutor never responded to defendant's letter, nor did he engage in plea discussions with the defendant; and (4) the prosecutor did not enter into a plea arrangement with the defendant. 347 N.C. at 26, 489 S.E.2d at 405.

The instant case is distinguishable from the facts in *Flowers*. While Walker's letters do indicate an admission of guilt, " 'plea bargaining implies an offer to plead guilty upon condition.' " *State v. Curry*, 153 N.C. App. 260, 264, 569 S.E.2d 691, 694 (2002) (citations omitted). The letters state he was willing to confess and help in any way in order to get probation, which articulates the plea arrangement defendant sought. Even though the prosecutor did not initially respond to defendant's letters, the letters ultimately lead to the prosecutor entering into plea discussions with Walker. This resulted in Walker entering a guilty plea, which was subsequently withdrawn. As a result, we hold that these letters constituted a "plea discussion" within the intent and meaning of N.C. Gen. Stat. § 15A-1025 and Rule 410 of the Rules of Evidence, and it was impermissible for the State to cross-examine Walker concerning those plea negotiations.

**STATE v. WALKER**

[167 N.C. App. 110 (2004)]

We now proceed to the second prong of the analysis, to determine whether the reading of the letters by the prosecutor at trial prejudiced defendant from receiving a fair trial. The purpose of N.C. Gen. Stat. § 15A-1025 is to "facilitate plea discussions and agreements by protecting both defendants and prosecuting officials from being 'penalized for engaging in practices which are consistent with the objectives of the criminal justice system.' " *Wooten*, 86 N.C. App. at 482, 358 S.E.2d at 78. In the portions of the letters read by the prosecutor, Walker offered to plead guilty to the charges in several of the letters, stated he had made a big mistake, and was willing to confess what he had done and who planned the robbery. The prosecutor brought this to the juries' attention repeatedly during his cross-examination. The admission of evidence that defendant was considering pleading guilty to the charges against him was highly prejudicial to his case and potentially influenced the jury's decision. *See Wooten*, 86 N.C. App. at 482, 358 S.E.2d at 79 (holding the admission of evidence that the defendant was considering pleading guilty to the charge against him and accepting a six year prison term was highly prejudicial and potentially influenced the jury's decision). Therefore, we vacate the judgments of the trial court entered against defendant Walker and remand for a new trial on the charges of robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury.

**[4]** Even though we have remanded these matters for a new trial, we address Walker's fourth and final assignment of error because there is a substantial likelihood that this issue could arise again during the new trial. Walker contends the trial court erred by admitting evidence of his statement to a superior officer. He asserts that the statement was the product of a custodial interrogation, without *Miranda* warnings, and thus violated his constitutional rights.

"[T]he initial inquiry in determining whether *Miranda* warnings were required is whether an individual was 'in custody.' " *State v. Buchanan*, 353 N.C. 332, 337, 543 S.E.2d 823, 826 (2001). In *Miranda v. Arizona*, the Supreme Court defined " 'custodial interrogation' as 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706 (1966)). When dealing with a defendant who is a member of the armed forces and whose statement is given to a superior officer, the inquiry becomes whether a reasonable Marine in defendant Walker's situation would believe his free-

dom of movement was limited to the same extent as if were under formal arrest. *State v. Davis*, 158 N.C. App. 1, 9, 582 S.E.2d 289, 295 (2003). We acknowledge that interrogation by a superior officer in the military raises a significant risk of inherent compulsion, which is of the type *Miranda* was designed to prevent. *Id.* at 6, 582 S.E.2d at 293.

In the instant case, the evidence does not indicate Walker was "in custody" at the time he was discussing the incidents of 7 April 2004 with his superior, Master Gunnery Sergeant Dean (Dean). The record shows that on 8 April 2002, Walker was questioned by First Sergeant Nylon, of the Naval Criminal Investigative Services, and Investigator Melton, and at each questioning he received *Miranda* warnings. Dean did not see Walker until the next day. Dean testified that when Walker came in the next morning "we started talking in my office, and basically he explained to me what the agent wanted . . . ." Dean then asked Walker if "he had anything to do with this mess" and whether he was carrying a weapon of any kind. Walker told Dean he was at Desperado's that night, but he had only gone to watch Browning's back because Browning was having some kind of dispute with the owner's boyfriend. Walker also told Dean that he carried a baseball bat of some type and he remained outside watching the bouncers. There was no testimony that Walker felt he could not leave or that he had to answer Dean's questions. Instead, it appears that Dean was simply inquiring into why Walker was being questioned. Since Dean's questioning of Walker did not constitute a "custodial interrogation," Dean was not required to administer *Miranda* warnings prior to their conversation.

Even assuming *arguendo* that Walker's statements to Dean were made during a custodial interrogation, we nevertheless find that the admission of Walker's statements were harmless beyond a reasonable doubt. *See* N.C. Gen. Stat. § 15A-1443(b) (2003) (finding a violation of a defendant's constitutional rights is prejudicial unless the State can demonstrate the violation was "harmless beyond a reasonable doubt"). Walker's statement to Dean was substantially identical to Walker's own testimony at trial, that he only went to the bar to provide back-up for Browning over a dispute Browning had with the owner's boyfriend, and that he stayed outside the entire time watching the bouncers. As Dean's testimony was duplicative of other trial testimony, we hold that even if this statement was the product of a custodial interrogation and inadmissible, the admission of the statements was harmless beyond a reasonable doubt.

STATE v. WALKER

[167 N.C. App. 110 (2004)]

## III. Defendant Browning's Remaining Assignments of Error

**[5]** In Browning's second assignment of error, he contends the trial court erred or committed plain error when instructing the jury on the charge of armed robbery, when the judge failed to specify the type of weapon used. We disagree.

Browning was indicted for robbery with a dangerous weapon. The indictment charging Browning specified the dangerous weapon was a bat. The trial court's instruction to the jury regarding the armed robbery charge did not specifically identify the weapon. Browning contends that since evidence was presented that a bat and guns were used in connection with the robbery, it cannot be determined which weapon the jury determined was dangerous, and thus the jury verdict is ambiguous, requiring that he receive a new trial.

In order to preserve an issue regarding jury instructions for appeal, a party must object to the jury charge or omission thereto before the jury retires to consider its verdict. N.C. R. App. P. 10(b)(2) (2003). The objecting party must state specifically the objection and the grounds for the objection. *Id.* Following the judge's instructions to the jury, the judge asked defense counsel if they had any objections or any requests for corrections to the court's instructions. Browning's attorney replied: "Nothing, Your Honor."

If a defendant were not required to object to a jury instruction that is possibly "ambiguous," this would contravene the express purpose of Rule 10(b)(2). The purpose of Rule 10(b)(2) is to bring possible errors to the attention of the trial court, so that the judge has the opportunity to correct them, thus preventing the need for a new trial. *Odom*, 307 N.C. at 660, 300 S.E.2d at 378. Browning was afforded ample opportunity to request that the judge specify the bat as the dangerous weapon during the charge conference and again following the trial court's charge to the jury. Since Browning did not object at trial, our review is limited to plain error. *Id.* at 661, 300 S.E.2d at 378-79.

Browning cites *State v. Ashe*, for the proposition that even though defense counsel did not object, since the trial court's alleged error violated his "right to a trial by a jury of twelve" he did not waive his right to raise the matter on appeal. *Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985). We find this case distinguishable. *Ashe* did not deal with jury instructions. Rather, in *Ashe*, after the jury had begun deliberations, the jury foreman asked the trial judge to clarify a legal term, and the judge responded to the request outside the presence of the other jurors. *Id.* at 38-39, 331 S.E.2d at 658-59. In this case, all

jurors were present during the instructions and counsel was given an opportunity to object to the charge as provided in Rule 21 of the General Rules of Practice for the Superior and District Courts.

If we were to take Browning's argument to its logical conclusion, anytime counsel contends an instruction is "ambiguous," then defendant would be entitled to have the matter reviewed under an "error" standard rather than a "plain error standard." This is clearly contrary to Rule 21 of the General Rules of Practice, Rule 10(b)(2) of the Rules of Appellate Procedure, and a long line of cases requiring "plain error" review in the absence of an objection to a jury instruction. *See, e.g., State v. Sexton,* 357 N.C. 235, 238, 581 S.E.2d 57, 59 (2003); *State v. Lucas,* 353 N.C. 568, 588, 548 S.E.2d 712, 726 (2001); *State v. Locklear,* 331 N.C. 720, 724, 417 S.E.2d 445, 447(1992); *State v. Tucker,* 317 N.C. 532, 539, 346 S.E.2d 417, 421 (1986). *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

As we have stated previously, to constitute plain error the appellate court must be convinced that absent the error, the jury probably would have reached a different verdict. *Odom,* 307 N.C. at 661, 300 S.E.2d at 379. After careful review, we do not find that the trial court's failure to specify the type of dangerous weapon used when instructing on the charge of robbery with a dangerous weapon rose to the level of plain error.

A verdict, which may appear ambiguous, " 'may be given significance and correctly interpreted by reference to the allegations, the facts in evidence, and the instructions of the court.' " *State v. Thompson,* 257 N.C. 452, 457, (1962) (citations omitted). The verdict should also be reviewed in conjunction with the charge given by the trial judge, as well as the evidence in the case. *Id.* In the instant case, when we consider the warrant, the indictment, the evidence, and the jury charge given, it clearly appears the jury, by their verdict, found defendant guilty of robbery with a dangerous weapon, and the dangerous weapon used was indeed the bat.

Several reasons support this conclusion. First, the indictment specifically listed the dangerous implement as being the bat. Second, when instructing the jury on the robbery charge, the trial judge did not use the pattern jury instruction for robbery with a firearm (N.C.P.I—217.20 (2003)). Rather, the trial judge charged the jury using the pattern jury instruction for robbery with a dangerous weapon, other than a firearm (N.C.P.I—217.30 (2003)), and specifically told counsel he was using that instruction. Had the judge been referring to the gun used in the robbery as being the dangerous weapon, he could

have instructed the jury that it was a dangerous weapon *per se* or used the pattern jury instruction for robbery with a firearm. However, nowhere in the trial judge's instructions does he mention the use of a firearm. In fact, the entire instruction is devoid of any indication that the judge was referring to a gun.

Finally, the evidence presented at trial showed that Perez was beaten with a bat. She was struck repeatedly in the head and back with the bat, and required thirty-three stitches to close the wounds to her head. Therefore, there was sufficient evidence for the jury to find the bat was a dangerous weapon.

There is nothing in the record to suggest that the jury was misled as to what instrument constituted the dangerous weapon. Browning has failed meet his burden under plain error review, that is, Browning has failed to demonstrate that had the trial judge specifically stated he was referring to the bat as the dangerous weapon when giving the instruction, the jury probably would have reached a different verdict. This assignment of error is overruled.

**[6]** In Browning's final assignment of error he contends the trial court erred in failing to find the mitigating factor of good character. We disagree.

A defendant's sentence may be mitigated by evidence that he has been a person of good character. N.C. Gen. Stat. § 15A-1340.16(e)(12) (2003). During sentencing, the judge must find a statutory mitigating factor if it is supported by a "preponderance of the evidence." *State v. Kemp*, 153 N.C. App. 231, 241, 569 S.E.2d 717, 723, *disc. review denied*, 356 N.C. 441, 573 S.E.2d 158 (2002). However, the burden is on the defendant to show the evidence clearly establishes the mitigating factor, such that no reasonable inference to the contrary can be drawn, and that the evidence is patently credible. *State v. Butler*, 341 N.C. 686, 693, 462 S.E.2d 485, 489 (1995). The sentencing judge's failure to find a statutory mitigating factor will be deemed error where the evidence of the mitigating factor is "both uncontradicted and manifestly credible." *Id.* at 694, 306 S.E.2d at 489. Good character may be proven by specific acts as well as by the opinions of others as to the defendant's reputation in the community. *State v. Benbow*, 309 N.C. 538, 547, 308 S.E.2d 647, 652-53 (1983).

Browning submitted six written letters including: one from a former sergeant in the Marine Corps, a retired assistant superintendent of schools, and his godmother, in support of his good character. The

State offered no evidence in rebuttal. However, it should. be noted that just because defendant's evidence is "uncontradicted, quantitatively substantial, and credible" it may still "fail to establish, by a preponderance of the evidence, any given factor in aggravation or mitigation." *State v. Blackwelder*, 309 N.C. 410, 419, 306 S.E.2d 783, 789 (1983). The trial judge may also consider the relationship of the defendant to the individuals who wrote the character letters in assessing the credibility of those individuals. *State v. Taylor*, 309 N.C. 570, 578, 308 S.E.2d 302, 308 (1983).

In *State v. Smallwood*, this Court found that even though defendant presented numerous letters stating "defendant was 'a very respectable person all his life,' that 'he has had some misfortune,' that he was known as 'a very good boy,' that 'he got caught up with the wrong people,' and so on[,]" those statements did not really go to defendant's good character. 112 N.C. App. 76, 83, 434 S.E.2d 615, 620 (1993) (citations omitted).

We find this reasoning to be applicable in the instant case. Defendant presented letters from various persons stating defendant had "displayed a high level of respect and honesty toward his family, friends and community," that he was "a caring young man who is generous and thoughtful," that he was "a dependable individual, with a superior work ethic." These statements are not specific, but instead are general statements as to defendant's character. In addition, the trial court did not have an opportunity to examine these individuals to determine the extent of their relationship with Browning, assess their credibility, or determine what they knew about Browning's activities. *See id.* Furthermore, the letter from the retired assistant superintendent does not describe recent knowledge of defendant's character. In fact, the letter infers bad character, stating that defendant's lack of positive support and direction is "no doubt [what] caused him to make some very bad decisions and, needless to say, poor choices in acquaintances from among others also serving in the Marines."

Defendant's character evidence, although not contradicted, was not the type of evidence which demonstrated defendant's good character by a preponderance of the evidence. Accordingly, we find no error.

### IV. Defendant Browning's Motion for Appropriate Relief

[7] Defendant Browning has filed a Motion for Appropriate Relief based upon the recent holding of the United States Supreme Court in

*Blakely v. Washington,* —— U.S. ——, 159 L. Ed. 2d 403 (2004). In *State v. Allen,* this Court addressed the applicability of *Blakely* to the imposition of aggravated sentences, holding that aggravating factors must be found by a jury and not by the trial court. 166 N.C. App. 139, —— S.E.2d —— (2004). Our Supreme Court stayed the Court of Appeals decision in *Allen* on 29 September 2004. *State v. Allen,* 2004 N.C. LEXIS 1112. We defer ruling on Browning's motion for appropriate relief pending guidance on this issue from our Supreme Court.

V. Defendant Hernandez's Assignments of Error

[8] In Hernandez's first assignment of error, he contends the trial court committed plain error and violated his constitutional rights when it admitted testimony concerning defendant's exercise of his right to remain silent and to have counsel present. We disagree.

During the prosecution's direct-examination of Investigator Melton, he testified that he gave Hernandez his *Miranda* warnings prior to questioning him. The following exchange then took place:

Q: [Prosecutor questioning Investigator Melton:] What did he tell you in the course or your interview?

A: I explained to Mr. Hernandez why I wished to speak with him or what it pertained to. We chatted for several minutes. I asked him about his involvement in this incident. He did not deny any involvement in it, but at one point during our conversation, which was very brief, probably three or four minutes, he said that he felt that he needed an attorney.

. . . .

Q: Investigator Melton, prior to Mr. Hernandez requesting an attorney, did he make any statements to you regarding a meeting he had with Mr. Aguillon?

A: He did.

Q: What did he tell you?

A: I'm referring to my notes. He stated that he had no part in the robbery. He claims that after the robbery, he went to Augillon's residence to tell him he was a suspect. Hernandez said Aguillon said that he did rob Desperado's but would give him $600 not to tell. Hernandez said he got greedy and took the money and that he still has some of the money. I asked Hernandez if he wanted to make a formal statement in which he responded that he thought

he had better check with an attorney. I immediately terminated our conversation.

It is impermissible for the trial court to admit testimony relating to a defendant's exercise of his right to remain silent and to request counsel. *State v. Elmore*, 337 N.C. 789, 792, 448 S.E.2d 501, 502 (1994). Such an error requires the defendant be granted a new trial unless it can be shown the error was harmless beyond a reasonable doubt. *Id.* (citing N.C. Gen. Stat. § 15A-1443(b)). However, in the instant case defense counsel failed to object to this testimony at trial and our review is limited to plain error. *State v. Walker*, 316 N.C. 33, 38, 340 S.E.2d 80, 83 (1986). *See also State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 807 (1983) (holding plain error review to be appropriate regarding situations involving evidentiary rulings by the trial court). As we have stated previously, to constitute plain error the appellate court must be convinced that absent the error, the jury probably would have reached a different verdict. *Odom*, 307 N.C. at 661, 300 S.E.2d at 379.

Defendant relies on *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91 (1976) in support of his argument. Our Supreme Court has applied the principles enunciated in *Doyle* in a number of cases, including *State v. Alexander*, 337 N.C. 182, 446 S.E.2d 83 (1994). We hold this case is controlled by *Alexander*, which relied on the earlier cases of *State v. Walker*, 316 N.C. 33, 340 S.E.2d 80 (1986) and *State v. Freeland*, 316 N.C. 13, 340 S.E.2d 35 (1986). *Id.* at 195, 446 S.E.2d at 91.

In *State v. Alexander*, our Supreme Court held the admission of testimony regarding the defendant's post-arrest silence did not constitute plain error because (1) the comments regarding the defendant's silence were relatively benign; (2) the prosecutor did not attempt to emphasize the defendant's silence; and (3) the evidence of the defendant's guilt was substantial. 337 N.C. at 196, 446 S.E.2d at 91.

After reviewing the record and transcript in this trial, we hold the admission of this testimony does not rise to the level of plain error. Investigator Melton was attempting to describe the circumstances under which he questioned Hernandez and Hernandez revealed that he accepted $600.00 from Auguillon to remain silent about the robbery. The testimony was also offered to show the chronology of the interview, and for the purpose of showing that Hernandez's admission came after he received his *Miranda* warnings, but before he invoked his right to have counsel present. This brief testimony of Investigator

Melton appears to be the only place in the record referencing Hernandez's silence. Additionally, the prosecutor did not attempt to emphasize Hernandez's silence or his request for counsel as indicators of defendant's guilt, and the evidence against Hernandez was substantial. For these reasons, we hold that Hernandez has failed to establish that, but for the admission of this evidence the jury probably would have reached a different verdict. This assignment of error is overruled.

[9] In Hernandez's second assignment of error, he contends the trial court committed reversible error in denying his motion for a mistrial. This contention is based on the prosecutor's comments made after he finished his cross-examination of Walker. The prosecutor stated in pertinent part: "I would like to reserve my right to recall [Walker] after the testimony of the other defendants." Hernandez asserts the prosecutor's statement was an improper comment on Hernandez's silence and privilege against self-incrimination, and that the statement effectively forced Hernandez to testify or risk appearing as though he had something to hide.

A motion for mistrial is addressed to the sound discretion of the trial court and we will not reverse such a ruling on appeal unless it appears the trial judge abused that discretion. *State v. Steen*, 352 N.C. 227, 279, 536 S.E.2d 1, 31 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001). A mistrial is appropriate only when such serious improprieties occur that it becomes impossible for the defendant to obtain a fair and impartial verdict. *Id.*

In the instant case, the trial court removed the jurors from the courtroom after the prosecutor made the above referenced comment. The trial judge denied defense counsel's motion for a mistrial, but did give a curative instruction immediately following the jurors' return to the courtroom. It has long been presumed that jurors will comply with the trial court's instructions. *Id.* at 280, 536 S.E.2d at 32. Here, defendant has failed to show the trial court's instruction was insufficient to cure any potential prejudice resulting from the comment. Consequently, the trial court did not abuse its discretion by denying defendant's motion for a mistrial. This assignment of error is overruled.

[10] In his third assignment of error, Hernandez contends the trial court erred in denying his motion to dismiss as there was insufficient evidence to support the verdict of robbery with a dangerous weapon. We disagree.

In considering a motion to dismiss, the only issue for the trial court is whether the essential elements of the offense are supported by substantial evidence and that such evidence supports the contention that the defendant was the perpetrator. *State v. Lucas*, 353 N.C. 568, 580, 548 S.E.2d 712, 721 (2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 580-81, 548 S.E.2d at 721. The court must view the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. *Id.* at 581, 548 S.E.2d at 721. Unless favorable to the State, the defendant's evidence is not to be considered, and any contradictions or discrepancies in the evidence are to be resolved in favor of the State. *Id.*

Under the theory of aiding and abetting, an accused is guilty of a crime if: "(i) the crime was committed by some other person; (ii) the defendant knowingly advised, instigated, encouraged, procured, or aided the other person to commit that crime; and (iii) the defendant's actions or statements caused or contributed to the commission of the crime by that other person." *State v. Goode*, 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999).

As a general rule, an accused must aid or actively encourage the person committing the crime or communicate in some way his intent to help the principal, as a person's mere presence at the scene of a crime is insufficient to establish his guilt. *Lucas*, 353 N.C. at 590-91, 548 S.E.2d at 727. In ruling on a motion to dismiss in the context of aiding and abetting, the court may also (1) infer a defendant's communication of his intent to aid from his actions and from his relationship to the actual perpetrators; (2) consider his motives to assist in the crime; and (3) consider the defendant's conduct before and after the crime. *State v. Little*, 278 N.C. 484, 488, 180 S.E.2d 17, 19 (1971).

The evidence, taken in the light most favorable to the State tends to show: (1) Hernandez, by his own admission was friends with Aguillon and the two had worked together as bouncers at Desperado's; (2) Aguillion and Browning visited Hernandez on the afternoon of 6 April 2002 and Browning told Hernandez of their plan to rob the bar that night; (3) Hernandez provided them with inside information as to the number of bouncers that would be there that night, that Perez carried a gun on her person, and that the weekend of the robbery was supposed to be busy because a raffle was being held; (4) prior to the robbery Hernandez agreed to accept a portion of

the proceeds of the robbery in exchange for keeping quiet; (5) Hernandez was present at the time of the robbery; (6) he did nothing to stop the robbery even though he was working as a bouncer; (7) he provided aid to the robbers by answering their questions about the bar's security; and (8) following the robbery, Hernandez admitted he accepted $600.00 of the robbery money to keep quiet.

This evidence demonstrates that Hernandez intended to assist Aguillon in robbing the bar, that he in fact assisted his co-defendants, and that Aguillon and Browning knew of and relied on Hernandez's support and aid. Consequently, we hold that the trial court did not err in denying Hernandez's motion to dismiss the charge of robbery with a dangerous weapon under the theory of aiding and abetting. This assignment of error is without merit.

[11] In Hernandez's fourth assignment of error he contends the trial court committed plain error by granting the State's motion to join the three co-defendants' cases for trial. We disagree.

Our Supreme Court has declined to extend plain error analysis beyond issues concerning jury instructions and evidentiary rulings. *State v. Wiley*, 355 N.C. 592, 616, 565 S.E.2d 22, 39-40 (2002), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003); *State v. Diaz*, 155 N.C. App. 307, 318, 575 S.E.2d 523, 530-31 (2002), *cert. denied*, 357 N.C. 464, 586 S.E.2d 271 (2003). Since Hernandez's contentions do not concern jury instructions or evidentiary matters, we decline to extend plain error analysis to his argument, and do not reach it. This assignment of error is without merit.

[12] In his fifth and final assignment of error, Hernandez contends it was plain error for the trial court to permit an uncertified Spanish interpreter to interpret the testimony of three witnesses during the State's case-in-chief. We disagree.

In *State v. Diaz* this Court specifically declined to extend the application of the plain error doctrine to this very issue. 155 N.C. App. at 318, 575 S.E.2d at 530-31. As a result, plain error analysis does not apply to this argument and we do not reach it. This assignment of error is without merit.

NEW TRIAL AS TO DEFENDANT WALKER. NO PREJUDICIAL ERROR AS TO DEFENDANTS BROWNING AND HERNANDEZ.

Judges TYSON and BRYANT concur.