STATE OF NORTH CAROLINA
v.
BRYANT LAMONT BOWENS
No. COA05-828
North Carolina Court of Appeals
Filed February 7, 2006
This case not for publication
Guilford County Nos. 03 CRS 30811, 24198, 03 CRS 24196.
Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell, for the State.
Kathryn L. Vanden Berg for defendant-appellant.
MARTIN, Chief Judge.
A jury found Bryant Lamont Bowens ("defendant") guilty of first-degree murder and possession of a firearm by a convicted felon. Upon his admission to habitual felon status, the trial court sentenced defendant to life imprisonment for the murder and a concurrent term of 133 to 169 months for possessing the firearm. Defendant gave timely notice of appeal in open court.
The State adduced evidence tending to show that defendant fatally shot Christopher Harmon in a parking lot next to the Club Enigma nightclub in Greensboro, North Carolina at approximately 2:30 a.m. on 26 January 2003. Harmon had gone to the club on the night of 25 January 2003 with friends Djuane Barmore, Mario Edwards, Lance Gainer, Larry Bishop, and Shawn Warren, all of whom but Warren were classmates at North Carolina A & T University ("A&T"). Harmon and Warren drove the group to the nightclub and parked their vehicles in the lot of a nearby Mac Thrift Furniture Store. Once inside the club, they were joined by another A&T student, Gary Champion.
Between 2:00 and 2:30 a.m., the owner of the club decided to close early after a fight broke out among a group of female patrons. Champion asked Harmon for a ride home and was so intoxicated that Bishop and Harmon had to carry him outside.
Tamikia Samuels, Cassandra Tatum, and Latoya Smith also went to Club Enigma on the night of the murder. Tatum, who was dating defendant, saw him "standing in a corner by himself" inside the club at some time around 12:30 a.m. Although the three women arrived at the club separately, they left together and drove to a pancake house in Samuels' minivan, which was parked next to Harmon's car. As she was exiting the club, Tatum asked defendant if he was leaving, too, "and he stated no because his cousin had got in a fight and he wanted to see what was going on with her."
In the parking lot beside the minivan, Smith got into an argument with Champion, who was standing with a group of friends and "saying stuff" to her. Bishop "grabbed [Champion] and tried to pull him to the back of [Harmon]'s car[,]" telling the women that Champion was drunk and "just talking." A silver-colored sport utility vehicle (SUV) pulled up to Harmon's car and stopped. The driver, described by witnesses as a "heavyset" man wearing a red leather jacket with National Basketball Association ("NBA") team logos, stepped out of the SUV brandishing a handgun. As bystanders sought to defuse the conflict, the gunman raised and lowered the gun twice before firing two or three shots, one of which struck Harmon fatally in the head. Hearing gunfire, the women "jumped in" the minivan, put their heads down and drove away. Barmore, Edwards, Gainer, and Warren identified defendant at trial as the man who shot Harmon. Barmore, Edwards, and Warren also selected defendant's photograph from lineups prepared by a detective of the Greensboro Police Department. Greensboro Police Officer E.S. Stevenson testified that he spoke to defendant while on foot patrol at the Parkside apartment complex in February of 2003, and noticed that defendant was wearing a bright red, leather "NBA logo jacket." Officer Anthony Wimbish testified that he stopped a car with an expired license plate driven by defendant on 20 January 2003, and that defendant was wearing a bright "red leather jacket with logos."
Defendant offered no evidence at trial but was interviewed by police following his arrest on 11 March 2003. When asked if he had heard about someone being shot and killed at Club Enigma, he replied that he was unaware of the shooting because he did "not hang out at clubs like that anymore." Defendant acknowledged "that he had been to the club Enigma in the past, but could not remember the last time he attended that club." Billing records of Nextel Communications revealed that seven calls were placed from defendant's cellular phone to Tatum's cellular phone between 2:19a.m. and 4:25 a.m. on 26 January 2003.
Defendant raises two arguments on appeal, both of which concern the joining of the charges for trial. Defendant first assigns plain error to the court's ruling allowing the State's motion for joinder under N.C. Gen. Stat. § 15A-926(a). In his second claim, defendant asserts that his defense attorneys rendered ineffective assistance of counsel by failing to object to joinder. See U.S. Const. amends. VI, XIV; N.C. Const. art. I §§ 19, 23. He notes that the State was allowed to introduce evidence of his prior conviction for larceny as an essential element of possession of a firearm by a convicted felon, and that this evidence would not have been admissible at a separate trial for the murder. He avers his attorneys "failed to appreciate . . . the prejudicial impact that the introduction of evidence of [his] prior conviction would have on the jury's decision in the murder case." Defendant casts counsels' inaction as patently unreasonable, in the absence of any benefit to the defense arising from a single trial. Characterizing the State's identification evidence as "weak[,]" defendant further insists that "[t]here is a reasonable probability that, but for counsel's failure to object to joinder, the jury would not have convicted [him]" of murder.
Defendant's purported assignment of plain error is not properly before this Court. Although N.C.R. App. P. 10(c)(4) authorizes plain error review when a defendant otherwise fails to preserve an issue for appeal, the North Carolina Supreme Court has confined the reach of plain error analysis to "errors in the trial judge's instructions to the jury or rulings on the admissibility of evidence." State v. Cummings, 346 N.C. 291, 314, 488 S.E.2d 550, 563 (1997), cert. denied, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998). Although defendant cites to a prior decision of this Court in which we reviewed the joinder of charges for plain error, State v. Walker, 154 N.C. App. 645, 651, 572 S.E.2d 866, 871 (2002), our Supreme Court has explicitly held that plain error review does not apply to such discretionary rulings as joinder. State v. Golphin, 352 N.C. 364, 460, 533 S.E.2d 168, 230-31 (2000), cert. denied, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). Moreover, a more recent decision of this Court recognized our high court's precedent on this issue and refused to review the granting of a prosecution motion for joinder for plain error under Rule 10(c)(4). State v. Walker, 167 N.C. App. 110, 133, 605 S.E.2d 647, 662 (2004). Accordingly, defendant's first assignment of error is overruled.
Because it bears directly upon matters raised by defendant's second assignment of error, we note that N.C. Gen. Stat. § 15A-926(a) (2005) allows multiple charges to "be joined . . . for trial when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." "A trial court's decision to consolidate or sever charges is discretionary and will not be overturned absent . . . a showing that its ruling was so arbitrary that it could not have been the product of a reasoned decision." State v. Harding, 110 N.C. App. 155, 162, 429 S.E.2d 416, 421 (1993). Without question, the instant charges were joinable under N.C. Gen. Stat. § 15A-926(a), arising from defendant's single act of shooting Harmon while in possession of a firearm. Although the jury that considered defendant's murder charge was made aware of his 1991 conviction for larceny by virtue of the trial court's ruling, we are not persuaded that evidence of his thirteen-year-old conviction for a non-violent crime was so inflammatory or prejudicial to the defense as to require severance of the charges, or to render their joinder manifestly unreasonable. Defendant thus cannot show error, or plain error, by the trial court.
Defendant also asserts a claim of ineffective assistance of counsel based on his attorneys' failure to object to the joinder of the charges for trial. To succeed on this claim, he must show both that his attorneys "made errors so serious that [they were] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" and that their deficiencies were so "serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Braswell, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quotation omitted).
Defendant has not shown a denial of his constitutional right to counsel. As discussed above, we find it unlikely that the trial court would have sustained an objection to the State's motion to join these closely-related charges for trial. Moreover, having carefully reviewed the evidence in this case, we conclude it is equally unlikely that the verdict on the murder charge would have been more favorable to defendant but for the jury's awareness of his 1991 conviction for larceny. Because we "can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different," we need not consider whether counsel's failure to object to joinder was deficient. Id. at 563, 324 S.E.2d at 249.
The record on appeal contains additional assignments of error not addressed by defendant in his brief to this Court. Pursuant to N.C.R. App. P. 28(b)(6), we deem them abandoned.
No error.
Judges BRYANT and GEER concur.
Report per Rule 30(e).