STATE OF NORTH CAROLINA v. CORNELIUS ALVIN NOBLES

No. 156A98-2

(Filed 22 August 2003)

**Constitutional Law— Confrontation Clause—capital sentencing–absent witness—transcript of prior trial**

The trial court erred during a capital sentencing proceeding by admitting the trial transcript of the testimony of an out-of-state rape victim in support of the prior violent felony aggravating circumstance. The record does not reflect any attempt to locate and produce the witness, as required by the Confrontation Clause.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a 26 September 2000 judgment imposing a sentence of death entered by Judge Charles Henry, at a capital sentencing proceeding held in Superior Court, Sampson County, upon defendant's conviction of first-degree murder. Heard in the Supreme Court 15 October 2002.

**STATE v. NOBLES**

[357 N.C. 433 (2003)]

*Roy Cooper, Attorney General, by Tiare B. Smiley, Special Deputy Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Janet Moore, Assistant Appellate Defender, for defendant-appellant.*

MARTIN, Justice.

Defendant was tried capitally at the 11 August 1997 session of Superior Court, Sampson County. The jury found defendant guilty of six counts of discharging a firearm into occupied property and further found defendant guilty of the first-degree murder of his wife, Ronita E. Nobles. The trial court sentenced defendant to consecutive sentences of forty to fifty-seven months each for four of the six counts of discharging a firearm into occupied property. The trial court arrested judgment for the conviction of the sixth count of discharging a firearm into occupied property and used it as the predicate felony supporting felony murder. Following a capital sentencing proceeding, the jury recommended a sentence of death for the murder, and the trial court entered judgment in accordance with that recommendation.

On appeal, this Court found no error in the guilt-innocence phase of the trial with regard to the convictions for first-degree murder and discharging a firearm into occupied property. *State v. Nobles*, 350 N.C. 483, 517, 515 S.E.2d 885, 905-06 (1999) (*Nobles I*). Because of instructional error at the capital sentencing proceeding, we vacated the death sentence and remanded the case for a new capital sentencing proceeding. *Id.*

On remand, a capital sentencing proceeding was held at the 25 August 2000 session of Sampson County Superior Court. The jury found two aggravating circumstances: (1) defendant had previously been convicted of a felony involving the use or threat of violence to the person, N.C.G.S. § 15A-2000(e)(3) (2001); and (2) defendant knowingly created a great risk of death to more than one person by means of a weapon which would normally be hazardous to the lives of more than one person, N.C.G.S. § 15A-2000(e)(10). The jury rejected the three statutory mitigating circumstances submitted: (1) the murder was committed while the defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); (2) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6); and (3) the statutory catchall, N.C.G.S. § 15A-2000(f)(9). The jury

found twenty-five nonstatutory mitigating circumstances. On 26 September 2000, the jury unanimously recommended that defendant be sentenced to death, and the trial court entered judgment in accordance with that recommendation.

Defendant argues that the trial court improperly admitted evidence in support of the (e)(3) aggravating circumstance, "defendant had been previously convicted of a felony involving the use or threat of violence to the person." N.C.G.S. § 15A-2000(e)(3). Defendant was convicted of rape in 1988. At the time of defendant's capital sentencing proceeding in August 2000, the victim from this prior crime (K.S.) was not a resident of North Carolina. To establish the (e)(3) aggravating circumstance, the prosecution introduced K.S.'s transcribed testimony from the 1988 rape trial. During the state's presentation of evidence, the prosecutor and his assistant role-played K.S.'s testimony from the previous trial, including cross-examination.

Defendant objected to the presentation of the transcript, arguing that unless K.S. testified in person and was subject to cross-examination, defendant's confrontation rights would be violated. On appeal, defendant argues the trial court committed reversible error by admitting the prior testimony of an available witness at the sentencing proceeding. Specifically, defendant maintains that he was not afforded the right to confront the witnesses against him, guaranteed by the Confrontation Clauses of the North Carolina Constitution, N.C. Const. art. I, § 23, and the United States Constitution, U.S. Const. amend. VI. Defendant further maintains that the admission of the testimony from the previous criminal trial violated his rights to due process and to a fair and reliable sentencing proceeding.

"The Confrontation Clause of the Sixth Amendment, made applicable to the states by the Fourteenth Amendment, guarantees a criminal defendant the right 'to be confronted with the witnesses against him.' " *State v. Jaynes*, 353 N.C. 534, 554, 549 S.E.2d 179, 195 (2001) (quoting U.S. Const. amend. VI), *cert. denied*, 535 U.S. 934, 152 L. Ed. 2d 220 (2002). " 'The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.' " *Lilly v. Virginia*, 527 U.S. 116, 123-24, 144 L. Ed. 2d 117, 126 (1999) (quoting *Maryland v. Craig*, 497 U.S. 836, 845, 111 L. Ed. 2d 666, 678 (1990)). We have generally construed the right to confrontation under our state constitution consistent with its federal counterpart. *See, e.g., State v. Fowler*, 353 N.C. 599, 614-15, 548 S.E.2d 684, 696 (2001), *cert. denied*, 535 U.S.

939, 152 L. Ed. 2d 230 (2002); *State v. Jackson*, 348 N.C. 644, 653-54, 503 S.E.2d 101, 107 (1998); *State v. Deanes*, 323 N.C. 508, 524, 374 S.E.2d 249, 260 (1988), *cert. denied*, 490 U.S. 1101, 104 L. Ed. 2d 1009 (1989). As the United States Supreme Court stated in *Pointer v. Texas*, 380 U.S. 400, 405, 13 L. Ed. 2d 923, 927 (1965), "[t]here are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." As such, the transcribed testimony of a witness from a prior judicial proceeding is generally admissible only in those instances where the government has demonstrated the unavailability of the witness to testify in person. *See White v. Illinois*, 502 U.S. 346, 353-54, 116 L. Ed. 2d 848, 858 (1992); *Ohio v. Roberts*, 448 U.S. 56, 65, 65 L. Ed. 2d 597, 607 (1980); *Mancusi v. Stubbs*, 408 U.S. 204, 211, 33 L. Ed. 2d 293, 300 (1972); *Barber v. Page*, 390 U.S. 719, 722, 20 L. Ed. 2d 255, 258-59 (1968).

In *Roberts*, the United States Supreme Court stated that the Confrontation Clause envisions

"a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."

448 U.S. at 63-64, 65 L. Ed. 2d at 606 (quoting *Mattox v. United States*, 156 U.S. 237, 242-43, 39 L. Ed. 409, 411 (1895)). The Court in *Roberts* applied a two-pronged test to evaluate a Confrontation Clause challenge to the admission of the preliminary hearing testimony of a witness not produced at the defendant's subsequent criminal trial. *Id.* at 65-66, 65 L. Ed. 2d at 607-08. Under the so-called "Rule of Necessity" prong, the state must either produce or demonstrate the unavailability of the witness. *Id.* at 65, 65 L. Ed. 2d at 607. A " 'witness is not "unavailable" for purposes of . . . the exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial.' " *Id.* at 74, 65 L. Ed. 2d at 613 (quoting *Barber*, 390 U.S. at 724-25, 20 L. Ed. 2d at 260) (alterations in original). The second prong requires the state to show that the challenged statements possess sufficient "indicia of reliability." *Id.* at 65-66, 65 L. Ed. 2d at 607-08.

This Court has also recognized the constitutional "preference for live testimony," which is premised upon the fundamental "importance of cross-examination, 'the greatest legal engine ever invented for the discovery of truth.' " *Jackson*, 348 N.C. at 654, 503 S.E.2d at 107 (quoting *White*, 502 U.S. at 356, 116 L. Ed. 2d at 859). As argued by defendant, "[w]hen two versions of the same evidence are available, longstanding principles of the law of hearsay, *applicable as well to Confrontation Clause analysis*, favor the better evidence." *United States v. Inadi*, 475 U.S. 387, 394, 89 L. Ed. 2d 390, 398 (1986) (emphasis added). "While the Confrontation Clause and rules of hearsay may protect similar values, it would be an erroneous simplification to conclude that the Confrontation Clause is merely a codification of hearsay rules." *Jackson*, 348 N.C. at 649, 503 S.E.2d at 104 (citing *California v. Green*, 399 U.S. 149, 155, 26 L. Ed. 2d 489, 495 (1970)). In determining whether the admission of statements at trial violates the Confrontation Clause, this Court has adopted the two-part *Roberts* test. *Fowler*, 353 N.C. at 615, 548 S.E.2d at 696. It is well settled in this jurisdiction that while the Rules of Evidence do not apply at sentencing, the right to confront witnesses does. *State v. Holmes*, 355 N.C. 719, 733, 565 S.E.2d 154, 165, *cert. denied*, —— U.S. ——, 154 L. Ed. 2d 412 (2002); *State v. McLaughlin*, 341 N.C. 426, 458, 462 S.E.2d 1, 18-19 (1995), *cert. denied*, 516 U.S. 1133, 133 L. Ed. 2d 879 (1996). Thus, the two-part *Roberts* analysis necessarily governs the admissibility of statements introduced during a capital sentencing proceeding.

In resolving the issue of whether the previous trial testimony was admissible at defendant's sentencing proceeding, we must first determine whether the state established that K.S. was constitutionally unavailable to testify. In short, we must determine whether the record shows that the state made good-faith efforts to locate and present K.S. *See Roberts*, 448 U.S. at 74, 65 L. Ed. 2d at 613.

The state relies on our decision in *State v. Prince*, 270 N.C. 769, 154 S.E.2d 897 (1967), and argues that the prior testimony of a witness is admissible when the witness is located out of state. *Id.* at 772, 154 S.E.2d at 899. In *Prince*, defendant objected to the former testimony of a witness who was deployed in Vietnam at the time of trial. *Id.* at 773, 154 S.E.2d at 899. *Prince* is inapposite to the instant case, however, as the state has not demonstrated, or even alleged, that K.S. was not present within the United States.

In any event, approximately one year after *Prince*, the United States Supreme Court rejected the assumption that "the mere

absence of a witness from the jurisdiction was sufficient ground for dispensing with confrontation." *Barber*, 390 U.S. at 723, 20 L. Ed. 2d at 259. "[I]f there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation. 'The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness.' " *Roberts*, 448 U.S. at 74, 65 L. Ed. 2d at 613 (quoting *Green*, 399 U.S. at 189 n.22, 26 L. Ed. 2d at 514 n.22 (Harlan, J., concurring)). The prosecution need not exhaust every possible alternative for producing a witness. *State v. Grier*, 314 N.C. 59, 68, 331 S.E.2d 669, 676 (1985). Nonetheless, to demonstrate constitutional unavailability, the state's good-faith efforts must include, at a minimum, an attempt to contact the witness and request his or her presence at the proceeding.

Turning to the facts of the present case, the transcript provides little insight as to whether the state undertook any effort whatsoever to produce K.S. During jury selection, when questioned about the forecasted length of the proceeding and the issues likely to arise during sentencing, the state indicated that it intended to offer the challenged transcript to support the (e)(3) aggravating circumstance. According to the state:

> She's not in North Carolina. She's out of state and though I'm aware we could do an out-of-state subpoena, the problem with that is she was reluctant—I mean, she was unwilling, uncooperative four years ago—three years ago to come back and the availability of again—I don't, of course, that's a different issue. We will be seeking to just put in her transcript of her testimony to show the circumstances of the aggravating factor, E 3.

The trial court indicated that it did not want to engage in a discussion of the admissibility of the transcript at that time and assured defense counsel that it would have an opportunity to be heard before the actual evidentiary hearing. As promised, the trial court heard from defense counsel following jury selection. Defense counsel objected to the introduction of the transcript, citing the heightened need for reliability in capital cases and defendant's Confrontation Clause rights as guaranteed under the North Carolina and United States Constitutions. The trial court overruled the objection and concluded that "the main issues . . . are reliability and relevance and maybe something in the body of the testimony that [defense counsel] may find the court needs to consider." During the sentencing proceeding, defense counsel reiterated the previous objection but was again overruled.

It is unclear from the transcript whether the state attempted to contact K.S. prior to the instant sentencing proceeding or whether prosecutors simply relied on their recollections from the 1997 proceedings in this case. Regardless, there is simply insufficient evidence in the instant record to support a conclusion that the state employed good-faith efforts to contact and produce K.S. To begin with, the only reference to the witness occurred during jury selection, at which time the trial court indicated it did not want to discuss the admissibility of the previous trial transcript. Second, the state did not present a witness to testify, offer other evidence, or otherwise demonstrate good-faith efforts to locate and present K.S. *Cf. State v. Hunt*, 339 N.C. 622, 645-46, 457 S.E.2d 276, 289-90 (1994) (previous trial testimony properly admitted where witness was unavailable because he asserted his constitutional right against self-incrimination); *State v. Swindler*, 129 N.C. App. 1, 5, 497 S.E.2d 318, 321 (detective's testimony that a witness was unavailable because she was in the hospital following a heart attack sufficient to establish unavailability), *aff'd per curiam*, 349 N.C. 347, 507 S.E.2d 284 (1998). Accordingly, the state did not adequately demonstrate, on this record, that K.S. was constitutionally unavailable to testify in person before the jury.

Moreover, this Court has examined the concept of "unavailability" as it relates to the hearsay rules under the North Carolina Rules of Evidence. Even though there exists a preference for face-to-face confrontation at trial, Rule 804 recognizes an exception to this requirement. *Hunt*, 339 N.C. at 645, 457 S.E.2d at 289. This exception permits the admission of out-of-court statements when a declarant is determined to be "unavailable" as defined in N.C.G.S. § 8C-1, Rule 804(a). N.C.G.S. § 8C-1, Rule 804(b) (2001). The Rules of Evidence do not apply at capital sentencing proceedings; however they are instructive and "may be helpful as a guide to reliability and relevance" in capital sentencing. *State v. Greene*, 351 N.C. 562, 568, 528 S.E.2d 575, 579, *cert. denied*, 531 U.S. 1041, 148 L. Ed. 2d 543 (2000).

Although out-of-court testimony offered to prove the truth of the matter asserted is generally inadmissible as hearsay, the Rules of Evidence provide several exceptions to this rule of exclusion when a witness is "unavailable." *State v. Williams*, 355 N.C. 501, 535, 565 S.E.2d 609, 629 (2002), *cert. denied*, —— U.S. ——, 154 L. Ed. 2d 808 (2003). Under the Rules of Evidence, a witness is considered "unavailable" when that witness:

(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or

(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or

(3) Testifies to a lack of memory of the subject matter of his statement; or

(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means.

N.C.G.S. § 8C-1, Rule 804(a). Before a trial court may admit hearsay testimony under Rule 804(b), it must find that at least one of the conditions listed in Rule 804(a) has been satisfied. *See, e.g., State v. King*, 353 N.C. 457, 478, 546 S.E.2d 575, 592 (2001), *cert. denied*, 534 U.S. 1147, 151 L. Ed. 2d 1002 (2002). The proponent of the statement bears the burden of satisfying the requirements of unavailability under Rule 804(a). *State v. Artis*, 325 N.C. 278, 304, 384 S.E.2d 470, 484 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990). The state did not satisfy any of the criteria for demonstrating unavailability as set forth in Rule 804(a). Although the statutory definition of unavailability is not dispositive of the constitutional issue presented here, it nonetheless bolsters our conclusion that the state did not properly demonstrate K.S.'s unavailability to testify at defendant's capital sentencing proceeding.

The (e)(3) aggravating circumstance may be proven in a variety of ways. We have held that the most appropriate way to show the presence of a previous conviction that satisfied the (e)(3) aggravator is the introduction of a duly authenticated court record or certified copy of the judgment. *State v. Silhan*, 302 N.C. 223, 272, 275 S.E.2d 450, 484 (1981), *overruled on other grounds by State v. Sanderson*, 346 N.C. 669, 679, 488 S.E.2d 133, 138 (1997). In fact, we have expressly stated this is the "preferred method for proving a prior conviction." *State v. Maynard*, 311 N.C. 1, 26, 316 S.E.2d 197, 211, *cert. denied*, 469 U.S. 963, 83 L. Ed. 2d 299 (1984). The state may also present *witnesses* to prove the circumstances of prior convictions and is not limited to the introduction of the record of conviction. *State v.*

*Roper*, 328 N.C. 337, 365, 402 S.E.2d 600, 616, *cert. denied*, 502 U.S. 902, 116 L. Ed. 2d 232 (1991). Nonetheless, once the state decides to present the testimony of a witness to a capital sentencing jury, the Confrontation Clause requires the state to undertake good-faith efforts to secure the "better evidence" of live testimony before resorting to the "weaker substitute" of former testimony. *Inadi*, 475 U.S. at 394-95, 89 L. Ed. 2d at 398.

The state's failure to undertake good-faith efforts to locate and produce K.S. constitutes reversible error under the facts and circumstances of the present case. The resulting constitutional error was arguably exacerbated by the state's closing argument. The prosecutor affirmatively represented during argument that he "wasn't able to bring [K.S.]" before the jury to testify. He also described K.S.'s testimony as "uncontradicted." Such statements are troubling, particularly in light of our admonition in *Nobles I* that the prosecution should not make insinuations during closing argument that are not supported by the record. *Nobles*, 350 N.C. at 517, 515 S.E.2d at 905.

When considering what evidence is necessary to support the (e)(3) aggravating circumstance and how to summarize that evidence during closing argument, prosecutors must walk a fine line. While the formal rules of evidence do not apply to capital sentencing proceedings, counsel and trial courts must nonetheless carefully evaluate the probative value of evidence against its potential to unfairly prejudice a jury. This is particularly true in capital proceedings, where the United States Supreme Court has indicated that fact-finding procedures adhere to a "heightened standard of reliability." *Ford v. Wainwright*, 477 U.S. 399, 411, 91 L. Ed. 2d 335, 347 (1986) (plurality opinion).

The Confrontation Clause requires a showing by the state that it attempted in good faith to contact the potential witness, that it attempted in good faith to inquire into her willingness and availability to testify, and that it presented the results of this inquiry to the trial court. The instant record does not adequately reflect that the state undertook these constitutionally mandated efforts to locate and produce K.S. In fact, the present record does not demonstrate that K.S. was even contacted for purposes of determining her availability to testify at defendant's capital sentencing proceeding.[1] "The right of

---

1. The parties have not cited any authority as to whether, for purposes of a capital sentencing proceeding, out-of-state witnesses must be subpoenaed as a prerequisite to a finding of constitutional unavailability. *See, e.g.*, N.C.G.S. § 15A-813 (2001). Because, as indicated above, the record does not reflect that the state made

DAWES v. NASH CTY.

[357 N.C. 442 (2003)]

confrontation may not be dispensed with so lightly." *Barber*, 390 U.S. at 725, 20 L. Ed. 2d at 260. Accordingly, we are required to order a new capital sentencing proceeding.

DEATH SENTENCE VACATED; REMANDED FOR NEW CAPITAL SENTENCING PROCEEDING.

―――――――――

any attempt to locate and produce K.S., we do not reach this question in the present case.