STATE v. HILL

[227 N.C. App. 371 (2013)]

NO ERROR.

Judges McCULLOUGH and DAVIS concur.

---

STATE OF NORTH CAROLINA
v.
JAMES SAMUEL HILL, JR., Defendant

No. COA12-1502

Filed 21 May 2013

1. **Appeal and Error—preservation of issues—unanimity of jury verdict—not raised at trial—plain error review not argued**

    Defendant-prisoner waived appellate review of whether the jury verdict was unanimous in a prosecution for communicating threats where he did not raise the issue at trial and did not argue for plain error review. There was no disjunctive instruction concerning which deputy the threats were communicated to and defendant had ample opportunity during the charge conference and again following the charge to the jury to request that the judge specify the deputy.

2. **Prisons and Prisoners—communicating threats to deputy—ability to carry out threats—deputy's belief**

    The trial court did not err by denying defendant-prisoner's motion to dismiss the charge of communicating threats where defendant asserted that there was insufficient evidence that a deputy believed defendant would carry out his threats against her. Even though the deputy thought that she and the other officers could contain an attempt by defendant to carry out his threats, she also believed that defendant was capable of carrying out his threats and would do so if he had the opportunity.

3. **Prisons and Prisoners—carrying a concealed weapon—razor blade under table**

    The trial court did not err when it denied defendant-prisoner's motion to dismiss the charge of carrying a concealed weapon where the razor blades from a pencil sharpener were found beneath a table in the day room and on a window ledge. There was such relevant evidence as a reasonable mind might accept as adequate to support the conclusion that defendant had the ability to and did conceal the

razor blade underneath the table. There was no need to address the remaining argument on this issue.

Appeal by defendant from judgment entered 22 August 2012 by Judge W. Robert Bell in Catawba County Superior Court. Heard in the Court of Appeals 22 April 2013.

*Roy Cooper, Attorney General, by Thomas H. Moore, Assistant Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Jon H. Hunt and Benjamin Dowling-Sendor, Assistant Appellate Defenders, for defendant–appellant.*

MARTIN, Chief Judge.

Defendant James Samuel Hill, Jr. was indicted for felonious possession of a dangerous weapon by a prisoner, communicating threats, carrying a concealed weapon, willful and wanton injury to personal property, willful and wanton injury to real property, and of being a habitual felon. The evidence presented at trial tended to show that, just before 11:00 a.m. on 16 July 2011, Deputy Sheriff Johnny Stiles, Deputy Sheriff Linda Anne Rogers, and a third deputy sheriff began to conduct routine cell searches in the "older section" of the Catawba County Detention Facility ("the jail"). When they arrived at defendant's cell, which was located in that section, Deputy Sheriff Stiles removed defendant from the cell in order to allow Deputy Sheriff Rogers and the other officer to conduct the search. Deputy Sheriff Stiles then sat defendant at the table in the adjoining "day room"; a small room adjoining defendant's personal cell to which defendant had regular access which included a table and chair, an additional toilet, and a shower. As a result of their search of defendant's personal cell, the officers found a thermal or knit shirt from which the sleeves had been removed. Because the officers were trained that any such alteration to an authorized item rendered the item contraband, the officers informed defendant that they would have to confiscate the item, at which point defendant "got upset, irate, and started using profanity." Defendant then told Deputy Sheriff Rogers "that he was going to kick [her] f--king ass bitch," and repeated this threat "[t]wo or three times at least." According to Deputy Sheriff Rogers, she both "believe[d] [defendant] was capable of doing it," and believed that defendant would carry out his threat if he had the opportunity to do so.

Deputy Sheriff Rogers then prepared a written report documenting the contraband that was removed from defendant's personal cell. About two hours after the contraband had been seized, and at Deputy Sheriff Rogers's request, Deputy Sheriff Stiles brought the report to defendant in order to request defendant's signature on the report, in accordance with jail policy. When the officer arrived at the door to defendant's personal cell, he saw through the twelve-inch-square viewing window in the cell door that defendant "had a type of webbing or cotton or whatever around his hands, which [they] found later came out [sic] was [defendant's] mattress." When Deputy Sheriff Stiles informed defendant that Deputy Sheriff Rogers had written him up and asked defendant if he would sign the report, defendant looked at the officer and said, "[I]f you come in here, I'll kick your ass." Deputy Sheriff Stiles then testified that he told defendant, "[W]ell, I guess that means you don't want to sign [the report,]" and walked away with the unsigned report in hand.

Later that same day, around 4:00 p.m., Deputy Sheriff Stiles was making his regular rounds in the jail when he got to defendant's cell and "noticed some sharp looking objects or metal looking objects between [defendant's] fingers" that the officer thought defendant "could use as weapons." Deputy Sheriff Stiles went back to the control room to inform Deputy Sheriff Rogers about what he observed. When the two officers returned to defendant's cell shortly thereafter, they discovered that defendant had attempted to cover the windows and lights with paper in order to obscure the view into his cell. After Deputy Sheriff Rogers encouraged defendant to remove the paper from the cell door window, the officers observed that defendant had wrapped himself in his bed sheet so that he was "totally covered" and "all you could see was [defendant's] little eyes," making him "look[] like a ninja" "ready for combat." When Deputy Sheriff Rogers started talking to defendant through the door, defendant "raised his hands" and she observed that "it looked like [defendant] had some like nail clippers, partial nail clippers, in one hand and what looked to [her] to be a razor blade in the other." Defendant then looked at Deputy Sheriff Rogers and said, "I should have slit your throat when I had the chance," and made "a slicing motion against his throat." Deputy Sheriff Rogers then called for assistance. Because defendant was directing his aggression towards Deputy Sheriff Rogers, when the sergeant and the other responding officers arrived at the scene, Deputy Sheriff Rogers was instructed to leave the area.

When the officers opened defendant's cell door, they saw "a mess of cotton, pieces of mattress, pieces of sheets and blankets" inside the cell, and found defendant wearing the sheet wrapped around his head and

holding the tattered mattress against his body and wrapped around his hands. Once the officers were able to restrain defendant and removed him to the booking area of the jail, the officers conducted a search of defendant's personal cell and the adjoining day room. In defendant's cell, the officers found a razor blade taken from a pencil sharpener on the window ledge, as well as pieces of nail clippers. In the adjoining day room to which defendant had regular access, the officers found a hollowed out pencil sharpener and the other part of the nail clippers underneath the sink and toilet unit, and found a razor blade stuck to the underside of the table where defendant had been seated during the search of his personal cell earlier in the day.

At the close of the State's evidence, defendant's motion to dismiss the charges of injury to personal property and real property was allowed; the motion was denied with respect to the remaining charges. Defendant offered no evidence and his renewed motion to dismiss was denied. The jury found him guilty of felonious possession of a dangerous weapon by a prisoner, communicating threats, carrying a concealed weapon, and of being a habitual felon. He purports to appeal from a judgment consolidating the offenses and sentencing him to a term of 120 months to 153 months imprisonment to begin at the expiration of all sentences defendant is presently obligated to serve.

Defendant sought to enter a *pro se* written notice of appeal from the judgment entered against him by completing a form made available to him in the jail, which form was filed with the trial court the day following the entry of judgment. However, the form that defendant used to appeal to this Court was a form indicating only that the signing inmate intended to give notice of appeal from district court to superior court. Additionally, although he indicated his intent to appeal from convictions for "possess weapon [sic] by prisoner, concealed weapon, habitual felon," defendant correctly identified only one of the two file numbers indicated on the judgment from which he purportedly seeks to appeal. Moreover, the record does not reflect that defendant's purported notice of appeal was served upon the district attorney's office. Because defendant concedes that, for these reasons, his written notice of appeal does not conform to the requirements for giving notice of appeal from a judgment in a criminal action, *see* N.C.R. App. P. 4, he petitions this Court to issue a writ of certiorari to allow review of his appeal. *See* N.C.R. App. P. 21(a)(1) ("The writ of certiorari may be issued . . . to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action . . . ."). In our discretion, we allow defendant's petition for writ of certiorari.

I.

[1] Defendant first contends the trial court violated his constitutional right to a unanimous jury verdict on the charge of communicating threats.

As a threshold matter, we first note that defendant did not raise this issue at trial. Although, "[a]s a general rule, defendant's failure to object to alleged errors by the trial court operates to preclude raising the error on appeal," *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985), "where the error violates the right to a unanimous jury verdict under Article I, Section 24, it is preserved for appeal without any action by counsel." *State v. Wilson*, 363 N.C. 478, 484, 681 S.E.2d 325, 330 (2009); *see also* N.C.R. App. P. 10(a)(1) ("Any such issue . . . which by rule or law was deemed preserved or taken without any such action . . . may be made the basis of an issue presented on appeal."). Such "[i]ssues of unanimity have usually arisen in the appellate courts when the trial court gave a disjunctive jury instruction." *State v. Davis*, 188 N.C. App. 735, 740, 656 S.E.2d 632, 635, *cert. denied*, 362 N.C. 364, 664 S.E.2d 313 (2008); *see also State v. Sargeant*, 206 N.C. App. 1, 26, 696 S.E.2d 786, 802 (2010) (Ervin, J., dissenting) ("The issues that have been addressed by the Supreme Court and this Court in cases involving alleged violations of Article I, section 24 of the North Carolina Constitution have included claims such as those involving the use of disjunctive jury instructions; the delivery of instructions to a single juror instead of to the entire jury; issues arising from questions posed by the trial court to the jury during deliberations in which the trial court allegedly coerced the jury into reaching a verdict; issues involving jury misconduct; and issues involving jury polling." (citations omitted)), *aff'd as modified on other grounds*, 365 N.C. 58, 707 S.E.2d 192 (2011).

However, "[a]lthough defendant relies upon disjunctive jury instruction cases" in order to assert his right to harmless error review of this unpreserved issue, there was no disjunctive instruction in this case. *See Davis*, 188 N.C. App. at 740, 656 S.E.2d at 635; *see also State v. Lawrence*, 360 N.C. 368, 374, 627 S.E.2d 609, 612 (describing "disjunctive jury instructions" as "instructions containing mutually exclusive alternative elements joined by the conjunction 'or' "), *disc. review denied after remand on other grounds*, 361 N.C. 175, 640 S.E.2d 58 (2006). Instead, defendant's challenge to this instruction is similar to that of the defendant in *State v. Walker*, 167 N.C. App. 110, 605 S.E.2d 647 (2004), *vacated in part and remanded on other grounds*, 361 N.C. 160,

695 S.E.2d 750 (2006), in which this Court considered the defendant's unpreserved challenge to the trial court's jury instruction on a charge of armed robbery where: the court failed to specify the type of weapon used in the commission of the crime; defendant argued that evidence was presented that both a bat and a gun were used in connection with the crime; and the indictment identified that the only dangerous weapon used in the commission of the crime was a bat. *See Walker*, 167 N.C. App. at 125, 605 S.E.2d at 657. In *Walker*, the defendant argued that, "since evidence was presented that a bat and guns were used in connection with the robbery, it cannot be determined which weapon the jury determined was dangerous, and thus the jury verdict is ambiguous, requiring that he receive a new trial." *Id.* However, the defendant failed to object to this "possibly 'ambiguous' " instruction at trial, even though he "was afforded ample opportunity to request that the judge specify the bat as the dangerous weapon during the charge conference and again following the trial court's charge to the jury." *Id.* at 125, 605 S.E.2d at 658. Then, on appeal, defendant urged that, because the court's error was one that violated his right to a trial by a jury of twelve, his failure to object "did not waive his right to raise the matter on appeal." *Id.* Nevertheless, this Court determined that, "[i]f we were to take [the defendant's] argument to its logical conclusion, anytime counsel contends an instruction is 'ambiguous,' then defendant would be entitled to have the matter reviewed under an 'error' standard rather than a 'plain error standard.' " *Id.* at 126, 605 S.E.2d at 658. Consequently, because "[t]his is clearly contrary to Rule 21 of the General Rules of Practice, [former] Rule 10(b)(2) of the Rules of Appellate Procedure, and a long line of cases requiring 'plain error' review in the absence of an objection to a jury instruction," we concluded that our review of this unpreserved error was "limited to plain error." *Id.* at 125–26, 605 S.E.2d at 658.

We are unable to distinguish the present case from Walker with respect to this issue. Here, defendant was indicted for communicating threats to Deputy Sheriff Rogers, but the court did not specifically name Deputy Sheriff Rogers as the victim of the offense when it instructed the jury with respect to this charge. Instead, the court charged the jury as follows:

> And finally the defendant has been charged with willfully communicating threats. For you to find the defendant guilty of this offense, the State must prove five things beyond a reasonable doubt. First, that the defendant willfully threatened or physically injured *the victim. . . .*

Second, that the threat was communicated to *the victim* orally.

. . . .

Fourth, that *the victim* believed that the threat would be carried out.

. . . .

If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant willfully and without lawful authority threatened to physically injure *the victim*, that this threat was communicated to *the victim* orally in a manner and under such circumstances which would cause a reasonable person to believe the threat was likely to be carried out, and that *the victim* believed that the threat would be carried out, it would be your duty to return a verdict of guilty. . . .

(Emphases added.) However, because defendant asserts that the State presented evidence that he made verbal threats to three different officers, he argues that the court's failure to specifically name Deputy Sheriff Rogers as "the victim" to whom threats were communicated erroneously permitted the jury to unanimously find him guilty of one count of communicating threats "even if [the jurors] did not unanimously agree that [defendant] was guilty for [communicating] a particular threat to a particular person." Nevertheless, like the defendant in Walker, this defendant "was afforded ample opportunity" "during the charge conference and again following the trial court's charge to the jury" "to request that the judge specify" that Deputy Sheriff Rogers was the person to whom he allegedly communicated his threats. *See Walker*, 167 N.C. App. at 125, 605 S.E.2d at 658. Yet, when the court asked defense counsel if he had "any requests for changes, deletions, corrections, alterations to the instructions," counsel said, "No. No, sir."

Moreover, here, during the charge conference, the State specifically raised the issue of jury unanimity with respect to the charge of possession of a dangerous weapon by a prisoner, and asked the trial court "to describe the weapon." After considering the "potential difficulty" regarding "the unanimity of verdict requirement" with respect to this offense, and after reasoning that "arguably you can have [the jurors] find that a toe nail clipper was not a weapon capable of inflicting serious bodily injury, half of them, and half of them find that the razor blade is," at the request of the State and with the assent of defense counsel, the court agreed to

specifically instruct the jury that the only weapon defendant possessed for the purpose of the instruction was a "razor blade from a pencil sharpener." Nonetheless, although the parties raised the issue of whether the court should specifically instruct the jury regarding the weapon used in its jury charge on the offense of possession of a dangerous weapon by a prisoner, defense counsel failed to raise the same issue with respect to the offense of communicating threats. Because we cannot distinguish the present case from *Walker* and consequently are bound by its holding, *see In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36–37 (1989), we must conclude that we may only review the court's purported error in instructing the jury for plain error. Since defendant does not argue that the trial court's purported error should be reviewed for plain error, we conclude he has waived appellate review of this issue on appeal. *See State v. Nobles*, 350 N.C. 483, 514–15, 515 S.E.2d 885, 904 (1999), *appeal after remand*, 357 N.C. 433, 584 S.E.2d 765 (2003).

II.

**[2]** Defendant next contends the trial court erred by denying his motion to dismiss the charge of communicating threats. Defendant asserts there was insufficient evidence that Deputy Sheriff Rogers believed defendant would carry out his threats against her. We disagree.

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980). "[A]ll of the evidence, whether competent or incompetent, must be considered in the light most favorable to the [S]tate, and the [S]tate is entitled to every reasonable inference therefrom." *Id.* at 78, 265 S.E.2d at 169.

Under N.C.G.S. § 14-277.1, a person is guilty of communicating threats if:

(1) He willfully threatens to physically injure the person or that person's child, sibling, spouse, or dependent or willfully threatens to damage the property of another;

(2) The threat is communicated to the other person, orally, in writing, or by any other means;

(3) The threat is made in a manner and under circumstances which would cause a reasonable person to believe that the threat is likely to be carried out; and

(4) The person threatened believes that the threat will be carried out.

N.C. Gen. Stat. § 14-277.1(a) (2011). Because "the gravamen of communicating threats is the making and communicating of a threat, . . . there is no requirement in section 14-277.1 that the threat actually be carried out." *State v. Thompson*, 157 N.C. App. 638, 645, 580 S.E.2d 9, 14, *supersedeas and disc. review denied*, 357 N.C. 469, 587 S.E.2d 72 (2003). Instead, "[t]hreatening language can amount to an offer to injure a person even though it is a conditional offer," particularly when the condition "can have a reasonable likelihood of occurring and does not negate an intention to carry out the threat." *State v. Roberson*, 37 N.C. App. 714, 716, 247 S.E.2d 8, 9 (1978). Thus, "[e]ven conditional threats," "if made and communicated by a defendant in a manner and under circumstances which would cause a reasonable person to believe that the threat was likely to be carried out, can constitute a violation of section 14-277.1, if the victim in fact believed the threat would be carried out." *Thompson*, 157 N.C. App. at 645, 580 S.E.2d at 14.

In the present case, defendant asserts only that the State failed to present sufficient evidence of the fourth element of this offense, arguing that the State failed to show that Deputy Sheriff Rogers subjectively believed defendant would carry out his threats "to kick [her] f–king ass bitch." Defendant first asserts that the evidence was insufficient to establish this element because defendant "did not attempt to carry out his threat; that is, he did not try to assault her." However, since this Court has already determined that "[t]he conduct proscribed by [N.C.G.S. § ]14-277.1 . . . is the making and communicating of the threat in the manner described in the statute, with no requirement that the threat be carried out," *Roberson*, 37 N.C. App. at 715, 247 S.E.2d at 9, we find this argument to be meritless.

Defendant next asserts that the evidence was insufficient to establish this element because, when asked whether she believed defendant's threat "was something that [defendant] was going to try to do," Deputy Sheriff Rogers answered, "I believe he was capable of doing it, but since I had two other officers with me I was confident that we could put [defendant] back in his cell without incident." In other words, defendant suggests, without authority, that his confinement in the jail necessarily renders it impossible for him to have committed the offense of

communicating threats against Deputy Sheriff Rogers in the jail because she believed an attempted assault on her person could be contained with the help of her fellow officers. However, we find defendant's suggestion to be unpersuasive. *See, e.g., State v. Edmisten*, No. COA11 46, __ N.C. App. __, 714 S.E.2d 211, slip op. at 2–3, 6–7 (2011) (unpublished) (holding there was sufficient evidence to submit the offense of communicating threats to a jury where a defendant threatened to kill or harm an officer while the defendant rode in the back of the officer's patrol vehicle and the officer "believed the threats were real and that defendant was capable of carrying them out"); *In re V.E.B.*, No. COA06 933, 182 N.C. App. 529, 642 S.E.2d 549, slip. op. at 8 (2007) (unpublished) (holding there was sufficient evidence to withstand a motion to dismiss on the offense of communicating threats where a juvenile threatened to assault an officer after the officer pepper-sprayed her and the threatened officer "believed [the juvenile] would have attempted to carry out her threat immediately *but for the presence of other law enforcement officers*" (emphasis added)). Here, Deputy Sheriff Rogers believed defendant would carry out the threat against her if he had the opportunity to do so——a belief that was later buttressed by defendant's avowal to her, "I should have slit your throat when I had the chance," which defendant said while making "a slicing motion against his throat" with pieces of nail clippers and a razor blade woven between his fingers. Thus, even though Deputy Sheriff Rogers thought that she and the other officers present could contain an attempt by defendant to carry out his threat, she also testified that she believed defendant was capable of carrying out his threat and would do so on the condition that he had the opportunity to do so. Accordingly, after viewing the evidence in the light most favorable to the State, we conclude that the court did not err by denying defendant's motion to dismiss the charge of communicating threats.

III.

[3] Finally, defendant contends the trial court erred by denying his motion to dismiss the charge of carrying a concealed weapon, because, he asserts, there was insufficient evidence that the weapon was "concealed about his person." We disagree.

The essential elements of carrying a concealed weapon in violation of N.C.G.S. § 14-269(a) are: "(1) The accused must be off his own premises; (2) he must carry a deadly weapon; [and] (3) the weapon must be concealed about his person." *State v. Williamson*, 238 N.C. 652, 654, 78 S.E.2d 763, 765 (1953). "The purpose of the statute is to reduce the likelihood a concealed weapon may be resorted to in a fit of anger." *State v. Gainey*, 273 N.C. 620, 622, 160 S.E.2d 685, 686 (1968). While the weapon

must be "concealed," *see State v. Mangum*, 187 N.C. 477, 479, 121 S.E. 765, 766 (1924) ("Manifestly no person could be convicted of carrying a weapon concealed when that weapon was not concealed."), the weapon need "not necessarily [be concealed] on the person of the accused, but in such position as gives him ready access to it," *Gainey*, 273 N.C. at 622, 160 S.E.2d at 686; " 'that is, concealed near, in close proximity to him, and within his convenient control and easy reach, so that he could promptly use it, if prompted to do so by any violent motive. . . .' " *Id.* at 623, 160 S.E.2d at 687 (omission in original) (quoting *State v. McManus*, 89 N.C. 555, 559 (1883)). Thus, " '[i]t makes no difference how [the weapon] is concealed, so it is on or near to and within the reach and control of the person charged.' " *Id.* (quoting *McManus*, 89 N.C. at 559).

In the present case, the evidence presented at trial tended to show that officers found one razor blade from a pencil sharpener stuck to the underside of the top of the table in the day room adjoining defendant's personal cell, where defendant had been seated earlier in the day, and found another on the ledge below the window in defendant's cell after defendant had made the cell "completely dark inside" by covering the windows and lights of the cell with paper. Defendant challenges the sufficiency of the evidence presented for this offense with two alternative arguments. First, defendant argues that the razor blade discovered on the underside of the table in the day room cannot support his conviction for carrying a concealed weapon because the blade was not "about his person" at the time that the officers discovered it. Alternatively, defendant argues that the blade discovered on the ledge below the window in his darkened cell cannot support his conviction for carrying a concealed weapon because the blade was not "hidden, secreted, or covered" at the time of its discovery.

We first consider whether the evidence was sufficient to establish that the razor blade discovered on the underside of the table in the adjoining day room had been "about his person." Defendant asserts that, because he was in the booking area of the jail at the time the razor blade was found underneath the table in the day room, the State failed to establish that the blade was within his reach and control and, thereby, failed to establish that the blade was "about his person," as required by the statute. Defendant also asserts that the blade could not be said to have been under his "convenient control" or within his "easy reach" because his access to the day room was non exclusive and because he could not control when he went into the day room. Nevertheless, defendant does not dispute that, on the same day the razor blade was found, he was seated at the table under which the blade was discovered; defendant

was capable of reaching the blade under the table from where he had been seated by Deputy Sheriff Stiles earlier in the day; and defendant had regularly scheduled access to the day room in which the blade was found. Additionally, at trial, State's Exhibit 1, which was admitted into evidence without objection, included two razor blades from a pencil sharpener, one of which had black caulking on it, which was used to adhere it to the underside of the table in the day room. According to three of the testifying officers at trial, the items in State's Exhibit 1 were the same items as those recovered from defendant's personal cell and from the adjoining day room. In other words, one of the two razor blades from the hollowed out pencil sharpener was found in the day room, while the other razor blade from that sharpener——which was likely the blade that Deputy Sheriff Rogers observed protruding from defendant's fingers and which defendant used to emphasize the slicing motion he made across his throat just moments before the blade's discovery on the window ledge——was found in his personal cell. Because, when viewed in the light most favorable to the State, and because this was "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion" that defendant had the ability to and did conceal the razor blade underneath the table when such blade was within his reach and control at the time he was seated at the table earlier in the day, *see Smith*, 300 N.C. at 78–79, 265 S.E.2d at 169, we conclude the trial court did not err when it denied defendant's motion to dismiss the charge of carrying a concealed weapon. Our disposition on this issue renders it unnecessary to address defendant's remaining argument on this issue.

No error.

Judges BRYANT and DAVIS concur.