An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-506

Filed 18 March 2026

Wake County, Nos. 22CR286000-910, 24CR264201-910

STATE OF NORTH CAROLINA

v.

ANTONIO TOBIAS GREENE, Defendant.

Appeal by defendant from judgment entered 19 August 2024 by Judge A. Graham Shirley in Wake County Superior Court. Heard in the Court of Appeals 18 November 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Benjamin T. Spangler, for the State of North Carolina.*
>
> *Center for Death Penalty Litigation, by Ryan Christopher Kuchinski, for defendant-appellant.*

DILLON, Chief Judge.

Defendant Antonio Greene appeals from final judgment entered upon a jury's verdict finding Defendant guilty of first-degree felony-murder for the death of Jamica Hinton. On appeal, Defendant argues the trial court erred by: (1) failing to instruct the jury on involuntary manslaughter and (2) allowing remote testimony of a minor

in violation of his constitutional and statutory rights. For the reasons below, we hold Defendant received a fair trial, and any purported error at trial was harmless error.

## I.    Background

The evidence at trial tended to show: On 2 September 2022, one bullet fatally struck Jamica Hinton in her ribcage as she sat in her living room. Moments earlier, Defendant had left Ms. Hinton's living room using the front door and went to his car parked on the street near the mailbox, where he allegedly fired one bullet into the air and one into the ground. Thereafter, Defendant left Ms. Hinton's home and traveled to a motel. Defendant threw the gun out of his car as he drove away from Ms. Hinton's home. Defendant surrendered to authorities the next day.

During the shooting, Ms. Hinton's two sons and Defendant's son were in the bedrooms of Ms. Hinton's home, and Defendant's two brothers and one cousin were in the living room. After Ms. Hinton's older son ("O.A.") heard gunshots and a scream, he exited the room and found Ms. Hinton on the living room floor and called 911. Authorities found two shell casings near the mailbox along the curb and one bullet inside Ms. Hinton's home.

Defendant and Ms. Hinton dated for over three years prior to Ms. Hinton's death. Friends and family describe the couple's relationship as physical and rampant with arguing. At trial, Ms. Hinton's older son testified remotely regarding what he heard on the night of his mother's death, including an argument between Ms. Hinton and Defendant, as well as gunshots and his mother's scream.

At trial, the State argued two theories: (1) Defendant directly fired at Ms. Hinton's home killing her, or (2) Defendant fired into the ground and the bullet ricocheted into Ms. Hinton's home and body. Following trial, a jury found Defendant guilty of first-degree felony murder. Defendant appeals.

## II.   Analysis

Defendant presents two arguments on appeal. We address each in turn.

### A.  Jury Instruction

A grand jury indicted Defendant for first-degree murder. N.C.G.S. § 14-17(a) (2023). At trial, the State proceeded on this first-degree murder indictment under a felony murder theory. The underlying felony was discharging a firearm into occupied property. During the charge conference, the trial court denied Defendant's request to instruct the jury on involuntary manslaughter. The trial court, then, instructed the jury on five options: (1) first-degree murder based on malice, premeditation, and deliberation; (2) first-degree felony murder; (3) second-degree murder; (4) voluntary manslaughter; or, (5) not guilty.

In essence, Defendant argues because his post-arrest statement to police indicated he had shot the gun once in the air and once at the ground, and since no one except Defendant witnessed the gun being shot, Defendant's statement negates the "into property" element of the underlying felony for the felony murder charge, thus necessitating an instruction on involuntary manslaughter.

Our Supreme Court, however, has held in a similar crime—discharging a

firearm into a vehicle—to be a "general intent" crime such that "the State [need not] prove any specific intent but only that the defendant perform[ed] the act[.]" *State v. Jones*, 339 N.C. 114, 148 (1994). Following *Jones*, our Court has held the underlying felony in the present case—discharging a firearm into occupied property—is a general intent crime. *State v. Canady*, 191 N.C. App. 680, 686 (2008). Relevant here, we held in *Canady* it is no defense if the defendant merely intended to fire the weapon "down and away as to not hurt anyone" so long as he intended to fire the weapon. *Id.*

Further, our Supreme Court has held discharging of a firearm into an occupied property qualifies as an underlying felony for felony murder. *State v. King*, 316 N.C. 78, 81–82 (1986) (stating discharging a firearm into occupied property qualifies under "or other felony committed or attempted with the use of a deadly weapon").

There is no evidence Defendant accidentally fired the weapon, only he did not specifically intend for any bullet to enter the victim's home. Accordingly, we conclude the trial court did not err in failing to instruct the jury on the charge of involuntary manslaughter.

## B. Remote Testimony

Defendant contends the trial court erred by permitting O.A. to testify remotely in violation of Defendant's federal and state constitutional rights and state statutory rights. We conclude the trial court did not err.

### 1. Confrontation Clause

Defendant objects on federal and state confrontation grounds. Each are

addressed below.

De novo review applies to a constitutional violation objected to at trial and raised on appeal. *Piedmont Triad Airport Auth. v. Urbine*, 354 N.C. 336, 338 (2001); *see also State v. Jackson*, 216 N.C. App. 238, 241 (2011) (citation omitted). Defendant asserts the trial court violated his constitutional right to confrontation because Defendant could not contemporaneously confer with his attorney who was cross-examining O.A. For the reasons below, we conclude Defendant did not lack direct or contemporaneous communication with his cross-examining attorney.

The Confrontation Clause of the Sixth Amendment and incorporated against the states in the Fourteenth Amendment requires: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . [.]" U.S. Const. amend. VI. A main concern of the Confrontation Clause "is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). Confrontation does not guarantee a face-to-face meeting between accused and witness. *Id.* at 847.

North Carolina's Constitution, Article I, Section 23 states "every person charged with crime has the right . . . to confront the accusers and witnesses." N.C. Const. art. I, sec. 23. The Constitution of the United States and North Carolina's Constitution are interpreted as "having no significant differences." *State v. Nobles*, 357 N.C. 433, 435–36 (2003) (citations omitted). The elements of confrontation

include "physical presence, oath, *cross-examination*, and observation of demeanor by the trier of fact." *Craig*, 497 U.S. at 846 (emphasis added).

For instance, in *Craig*, the United States Supreme Court noted under the Maryland child witness procedure, the defendant remained "in electronic communication with defense counsel," while emphasizing the four elements above. *Id.* at 842. In *Jackson*, this Court noted the defendant's ability during cross-examination "to communicate directly with his lawyer to express any concerns about transmission, volume, perception, or visibility." 216 N.C. App. at 244.

Similarly, in *State v. Lanford*, this Court noted "[t]here was a phone in the [side] room so that defendant could cause a signal to flash on the phone on defense counsel's table to indicate he wished to speak with his attorney." 225 N.C. App. 189, 204–05 (2013). Hence, a Confrontation Clause analysis under our state or the federal Constitution requires some type of simultaneous communication channel between a defendant and his cross-examining attorney.

Here, Defendant remained in direct communication with one attorney because he was present in a side room with him, while Defendant's other attorney was at counsel's table getting ready to cross-examine O.A. The trial court permitted Defendant to speak with his cross-examining attorney who remained in the court room after the State's direct examination of O.A. Defendant could notify the cross-examining attorney via a text or otherwise pinging the court via Webex and ask to recess for Defendant and cross-examining attorney to privately confer. A Webex ping

or text message notification is similar to the phone light flashing in *Lanford*. Defendant does not argue he attempted to, or the trial court denied a request for him to speak with his cross-examining attorney, merely the record lacks information of his general ability to communicate. This Court finds such argument unpersuasive.

Additionally, the trial court confirmed on various occasions Defendant's ability to see and hear O.A.'s testimony, which Defendant confirmed by raising his hand. Defendant's counsel cross-examined O.A., and Defendant observed the proceedings in real time. All such assurances by the trial court fall within *Craig* and "direct[ ]" communication as stated in *Jackson* because Defendant could speak to the side room attorney in person or notify the cross-examining attorney of his need to speak with her via a text notification or Webex ping. *See Jackson*, 216 N.C. App. at 244.

Because nothing in the record suggests the trial court denied Defendant an opportunity to speak with his cross-examining attorney in private or the existence of an inability to contemporaneously contact the cross-examining attorney, this Court cannot conclude there is a Confrontation Clause violation based on mere conjecture of Defendant. Therefore, the trial court properly maintained Defendant's federal and state Confrontation Clause rights.[1]

---

[1] Presuming a violation of Defendant's Confrontation Clause rights, any violation amounts to harmless error. N.C.G.S. § 15A-1443(b); *see State v. Ortiz-Zape*, 367 N.C. 1, 13 (2013). Defendant does not argue he attempted to speak with his cross-examining attorney or the trial court's denial of such request. Otherwise, the trial court ensured compliance with the rights afforded to a criminal defendant under the Confrontation Clause. Moreover, Defendant does not allege structural error. *See State v. Garcia*, 358 N.C. 382, 409–10 (2004).

2. Statutory Requirement

Defendant contests O.A.'s testimony on three statutory grounds. We address each in turn.

The standard of review as to whether remote testimony is necessary and the determinations underlying Section 15A-1225.1(b) "are findings of fact that will not be disturbed on appeal absent competent record evidence in support thereof." *Jackson*, 216 N.C. App. at 245. An alleged statutory violation is a question of law and is subject to de novo review on appeal. *See State v. Thomsen*, 369 N.C. 22, 24 (2016); *see also State v. Phachoumphone*, 257 N.C. App. 848, 853 (2018) (citation omitted). A defendant must show: (1) a statutory violation; and (2) prejudice, to warrant a new trial. *State v. Love*, 177 N.C. App. 614, 623 (2006) (citation omitted).

Remote testimony applies to minors under sixteen years old and is testimony "outside of the physical presence of the defendant" in a criminal proceeding. *See* N.C.G.S. § 15A-1225.1(a) (2023). Remote testimony is permitted when the trial court determines the minor "would suffer serious emotional distress[ ] . . . by testifying in the defendant's presence, and [ ] the child's ability to communicate with the trier of fact would be impaired." *Id.* § 15A-1225.1(b)(1)-(2). Following an evidentiary hearing on the matter, the trial court "*shall* state the findings of fact and conclusions of law supporting the court's determination." *Id.* § 15A-1225.1(d) (emphasis added). Specifically, the order must:

(1) State the method by which the child is to testify.

> (2) List any individual or category of individuals allowed to be in, or required to be excluded from, the presence of the child during the testimony.
>
> (3) State any special conditions necessary to facilitate the cross-examination of the child.
>
> (4) State any condition or limitation upon the participation of individuals in the child's presence during his or her testimony.
>
> (5) State any other condition necessary for taking or presenting the testimony.

*Id.*

Here, O.A. was fifteen years old at the time of trial. Defendant contests O.A.'s stepmother's testimony which supported the trial court's determination O.A. "would suffer serious emotional distress . . . by testifying in [Defendant's] presence, and that [O.A.'s] ability to communicate with the trier of fact would be impaired," *id.* § 15A-1225.1 (b), and the lack of written evidentiary findings on the matter. *Id.* § 15A-1225.1(d).

First, Defendant cites *Lanford* and *Jackson* to support his contention asserting a child's attending mental health professional is required to testify at the evidentiary hearing for remote testimony. *See* 225 N.C. App. at 206–07; 216 N.C. App. 245–46. However, the remote testimony statute contains no such requirement. *See* N.C.G.S. § 15A-1225.1(c) (2023). While the trial courts in both *Lanford* and *Jackson* rely on expert testimony in making its determination, there is no statutory requirement for expert testimony. *See, e.g., Phachoumphone*, 257 N.C. App. at 852 (trial court

granting remote testimony of child in absence of a State expert to support the motion). There cannot be a statutory violation when there is no statutory mandate. Thus, the trial court's reliance on O.A.'s stepmother's testimony at the evidentiary hearing was proper.

Second, Defendant asserts O.A.'s stepmother's testimony was insufficient in substance for the trial court to determine O.A.'s ability or inability to testify in front of Defendant. Specifically, Defendant asserts stepmother testified more about O.A.'s fear of being in the forum in general as opposed to being in Defendant's presence. *See* N.C.G.S. § 15A-1225.1(b).

O.A.'s stepmother and father have been O.A.'s full-time caretakers since Ms. Hinton's death. At trial, O.A.'s stepmother testified if O.A. was in Defendant's presence it would have caused him serious emotional distress and impacted his ability to communicate. Additionally, based on O.A.'s stepmother's testimony, the trial court specifically found O.A. began therapy following Ms. Hinton's death; was diagnosed with PTSD, depression, and anxiety; started medication in the month immediately preceding the trial when preparing for this case; and suffered sleeplessness and was "on edge" leading up to the trial. *See Jackson*, 216 N.C. App. at 245 (minor's mother testifying to various behavior changes and anxiety over encountering defendant in evidentiary hearing for remote testimony). Based on this evidence, this Court concludes competent evidence supports the trial court's

determination to permit the remote testimony of O.A.[2]

Third, Defendant contends the trial court's failure to provide a written order incorporating its ruling about O.A.'s remote testimony prevents this Court from conducting "meaningful appellate review" and thus, prejudices Defendant. *See* N.C.G.S. § 15A-1225.1(d) (2023); *State v. Lippard*, 152 N.C. App. 564, 571 (2002) (citation omitted). The trial court did not violate G.S. 15A-1225.1(d) by failing to provide a written order because the statute does not require a written order. Here, the trial court expressly included a statement in the record regarding the lack of a written order. Additionally, the trial court made clear findings of fact regarding O.A.'s oral testimony in the transcript. Further, Defendant does not assert the presence of a material conflict in the record nor indiscernibility of the transcript to provide meaningful appellate review. *See State v. Bartlett*, 368 N.C. 309, 312–13 (2015) (explaining lack of meaningful appellate review when the oral findings are inadequate). Therefore, there is no statutory violation because there is no statutory requirement for a written order.

In conclusion, competent evidence supports: (1) O.A.'s stepmother's ability to testify; and, (2) the substance of her testimony in supporting the trial court's determination. Additionally, on de novo review, there is no statutory violation of G.S.

---

[2] *See State v. Seelig*, 226 N.C. App. 147, 158–59 (2013) (holding it is not up to this Court to revisit a trial court's credibility determination in allowing live two-way video testimony when Defendant contends the witness merely fears testifying in general).

15A-1225.1(d).

## III.    Conclusion

The trial court did not err in failing to instruct the jury on involuntary manslaughter.  Defendant failed to carry his burden to show there was a reasonable possibility the jury would have been persuaded to adopt a finding of involuntary manslaughter where the trial court instructed the jury on two lesser-included offenses of first-degree felony murder.  The remote testimony of O.A. did not violate Defendant's constitutional or statutory rights.  We conclude Defendant received a fair trial, and any purported error at trial was harmless error.

NO ERROR.

Judges TYSON and STROUD concur.

Report per Rule 30(e).